Frederick VON ALMEN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1084S403.

Supreme Court of Indiana.

Aug. 7, 1986.

William Suarez, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Frederick Von Almen was accused of fatally shooting a Valparaiso woman after breaking into her home on September 4, 1983. Von Almen raised the defense of insanity at his subsequent jury trial. He was convicted of murder, Ind. Code 35–42–1–1 (Burns 1985 Repl.), and sentenced to a term of sixty years imprisonment.

In this direct appeal, Von Almen raises four issues:

1) Whether the trial court abused its discretion and violated Von Almen's constitutional right to a fair trial by failing to question the jury about prejudicial publicity;

2) Whether the trial court erred by refusing to allow Von Almen to make a record of all objections;

3) Whether Von Almen's Sixth Amendment right to cross examination was violated when the trial judge asked defense counsel to focus on the content of a psychiatric report and not on the manner in which it was obtained; and

4) Whether the trial court allowed the prosecuting attorney to make inaccurate and prejudicial statements during voir dire.

### I. *Publicity During Trial*

On the evening of the third day of the trial, ABC's "Nightline" news program featured a murderer who was being released from prison in California. The inmate said he could not promise that he would not kill again. The late-night broadcast dealt with the drawbacks to determinate sentencing but also included a discussion of the psychiatrist's role in the courtroom.

On each of the five days of the trial, the jurors were admonished to refrain from reading newspaper accounts of the case. However, the judge did not mention radio or television reports until after the "Nightline" broadcast. The jurors also received no preliminary or final instructions to disregard any evidence gained outside the courtroom.

Before the afternoon session on the fourth day of trial, counsel and the trial judge met in chambers. The court reporter was not present. Defense counsel told the court that during lunch he had learned from several jurors that they had viewed the "Nightline" program. Furthermore, he said two local newspapers had published stories concerning the Von Almen trial and that the headlines were visible at a newsstand in the courtroom lobby. Defense counsel requested that the jury be questioned concerning prejudicial news coverage, pursuant to *Lindsey v. State* (1973) 260 Ind. 351, 295 N.E.2d 819. The trial judge declined to conduct the voir dire but made no ruling on the record.

■ "Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively...." *Lindsey v. State*, 260 Ind. at 359, 295 N.E.2d at 824. The trial court's ruling on a request to poll the jury will be affirmed unless it appears to have been an abuse of discretion. *Id.*

■ In this case, the newspaper headlines merely summarized the events at trial and were harmless. The "Nightline" broadcast concentrated on a prisoner in a distant state who had not raised the defense of insanity. The program did not refer to Von Almen nor to Indiana law. The "Nightline" program was not so similar to the case at trial as to raise a substantial risk of prejudice. Therefore, we conclude that the judge's failure to poll the jury was not an abuse of discretion.

II. *Opportunity To Make A Record*

■ Von Almen claims the trial court erred at three different times by refusing to allow him to make a record, thereby prejudicing the presentation of his defense and limiting the areas of his appeal. The importance of establishing a record as a prerequisite to appellate review cannot be understated. An appellant has the obligation to make the proper specific objection and to preserve the record for appeal. *Underwood v. State* (1981), Ind., 414 N.E.2d 588. A question cannot be raised on appeal unless a proper and timely objection is made in the trial court. *Sams v. State* (1969), 251 Ind. 571, 243 N.E.2d 879. Grounds for objection not raised in the trial court are not available on appeal. *Strickland v. State* (1977), 265 Ind. 664, 359 N.E.2d 244.

Review of the record reveals that Von Almen was able to make a record on each allegation of error. Von Almen's efforts may have been limited, but the trial court has broad discretion in the control of proceedings. *Drake v. State* (1984), Ind., 467 N.E.2d 686.

■ In the first instance of alleged error, defense counsel objected to the prosecutor's use of the term "murder" to describe the victim's death. The trial court overruled the objection. Later, at an *in camera* discussion of a different matter, defense counsel asked to state further grounds for that objection. The judge refused, noting that the objection and ruling were on the record. Defense counsel was not precluded from making a record; he simply was barred from citing new grounds for an objection long after it was overruled.

In the second episode, defense counsel claimed the victim's family made prejudicial comments while defense witnesses were testifying. At one point, after Von Almen's father testified and was returning to his seat, the victim's father called him a liar. Defense counsel requested that the court order the victim's family to refrain

from making further comments and to sit away from the jury. He further requested that the jury be admonished to disregard any comments made by the victim's father to Von Almen's father.

After allowing both the defense and prosecution to state their positions, the trial judge ruled that the exchange between the two parents did not seem unusual. The judge agreed to give a final instruction on the matter, although Von Almen never tendered one. Defense counsel disagreed with the court's characterization of the utterances as whispering: "That wasn't whispering. We can bring in witnesses who heard it." The judge responded, "I'm not asking for further comments," and proceeded to go off the record temporarily. When the record recommenced, defense counsel requested that the jury immediately be admonished to disregard the parental confrontation. The judge refused. Again, it does not appear that defense counsel was denied the opportunity to make a record. He stated his objection and his proposed cure. He outlined the testimony of the two witnesses whose testimony, he believed, would support his position. Once again, inasmuch as Von Almen was able to make an adequate record, his claim that he was "seriously hampered" by the trial court is unpersuasive.

In the final instance of alleged error, defense counsel objected to the introduction of evidence which he alleged was illegally obtained. The judge ruled that the manner in which the evidence was acquired was immaterial. Defense counsel reserved the right, "without waiving" error, to make a further record on this issue at the conclusion of trial. The judge agreed, but defense counsel never availed himself of the opportunity to make the record. Defense counsel was able to make a record at the time of the objection and the judge did not impede any effort to extend that record at the close of the trial. Therefore, no error has been shown.

### III. *Cross-examination*

One of the psychiatrists who examined Von Almen met with the prosecutor before-hand and received copies of the reports of other psychiatrists concerning Von Almen's sanity. This psychiatrist testified that he rarely saw other reports before making his own evaluation. Of the five psychiatrists who examined Von Almen, he was the only one to testify that Von Almen was sane both at the time of the homicide and at the time of trial.

On cross-examination, defense counsel asked detailed questions about the circumstances surrounding the meeting between the prosecutor and the psychiatrist. The judge interceded and asked defense counsel, "Let's see if we can get into the report." Defense counsel objected and the judge ruled that the time of day that the psychiatrist received the report and the method by which a meeting was set were not relevant.

Von Almen alleges that his Sixth Amendment right to cross-examination was violated because he was denied an adequate opportunity to inquire as to the witness' bias and prejudice. Von Almen raises no constitutional issue here. A Sixth Amendment issue would be raised only when the trial court prohibits altogether cross-examination on a subject bearing upon the credibility of a crucial State witness; any lesser curtailment is reviewable only for an abuse of discretion. *Smith v. State* (1979), 270 Ind. 579, 388 N.E.2d 484. Moreover, it is not reversible error to limit cross-examination for impeachment purposes if the line of questioning would not give rise to a reasonable degree of probability of bias and prejudice. *Blankenship v. State* (1984), Ind., 462 N.E.2d 1311.

In this case, Von Almen attempted to impeach the credibility of the psychiatrist by showing the meeting with the prosecutor and review of the other psychiatric reports prejudiced the doctor against Von Almen's claim of insanity. In this case, the time of day at which the report came to the psychiatrist or the means by which the prosecutor communicated to the psychiatrist would not contribute to a showing of bias and prejudice. Furthermore, through

subsequent cross-examination, defense counsel elicited the very testimony which the judge originally had found irrelevant. Having asked the witness all the questions he desired and having received answers, Von Almen cannot now complain that the trial court violated his Sixth Amendment right of cross-examination.

### IV. *Voir Dire*

Von Almen concludes that the prosecutor's statements during voir dire prejudiced his constitutional right to a fair trial. During voir dire, the prosecutor asked the prospective jurors to imagine themselves driving an automobile. Three jurors were asked whether they had ever thought to themselves that another driver was "crazy." The question was part of an effort by the prosecution to distinguish "crazy" from "legally insane."

The prosecutor also told the prospective jurors:

> I'm certainly not suggesting that anyone disregard the facts or evidence and decide the case strictly on emotions. However, you don't go back in the Jury Room and forget your common sense and your everyday activities and say all of a sudden I'm not going to allow emotions to tell me about the facts and how to understand the evidence. You can't chop that out of you. So I think Mr. Ruman and I are saying sort of the same thing. You never decide the case strictly on emotion and say I seen (sic) this person, she's dead now and we want to hang the Defendant for it. You don't let emotion override everything else but your emotion is part of you and you can't ignore that and you have to examine the evidence in light of the everyday experience and common sense.

Von Almen argues that the automobile scenario played on the jury's fears and called upon their prejudices by indicating that a person could do crazy things without being legally insane. He also alleges that the prosecutor's later remarks improperly instructed the jury that they could use their emotions to reach a verdict.

The function of voir dire examination is not to educate jurors, but to ascertain whether jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Blackburn v. State* (1979), 271 Ind. 139, 390 N.E.2d 653. Questions which seek to shape a favorable jury by deliberate exposure to the substantive issues in the case are improper. *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409. A trial court has broad discretionary power to regulate the form and substance of voir dire. *Murphy v. State* (1984), Ind., 469 N.E.2d 750. Yet the court has competing concerns during voir dire. It must be mindful that jurors are to be examined to eliminate bias but not to condition them to be receptive to the questioner's position. Conversely, it must afford each party reasonable opportunity to exercise his peremptory challenges intelligently through inquiry. *Everly v. State* (1979), 395 N.E.2d 254, 271 Ind. 687.

We conclude that the prosecutor's comments about the automobile could have elicited information about the juror's beliefs concerning the insanity defense. The prosecutor's statements about emotion did no more than state the law; a juror cannot reach a verdict purely on emotion, but emotion is an inseparable part of the common sense and everyday experience with which the jury must view the evidence. The trial judge's denial of objections to these statements during voir dire was a sound exercise of his discretion.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, and PIVARNIK, JJ., concur.

DICKSON, J., dissents without opinion.