Monte STEELMAN, Appellant–
Defendant

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A01–9109–CR–0287.

Court of Appeals of Indiana,
First District.

Oct. 28, 1992.

Jodie English, Richmond, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Monte Steelman was convicted of dealing in marijuana within 1,000 feet of school property, a Class C felony,[1] and was adjudicated an habitual offender. The court sentenced him to the presumptive term of four years' imprisonment for the dealing in marijuana conviction, and enhanced the sentence by the minimum term of 20 years' imprisonment for the habitual offender adjudication. Steelman now appeals his conviction and sentence. He raises five issues for our review, which we restate as:

---

1. IND.CODE 35-48-4-10.

I. Whether the state had to prove Steelman both delivered and knew he delivered marijuana within 1,000 feet of school property.

II. Whether the prosecutor committed misconduct during voir dire and opening and closing statements.

III. Whether the evidence was sufficient to support his habitual offender adjudication.

IV. Whether the sentence was manifestly unreasonable and disproportionate to the crime.

## FACTS

On November 26, 1990, Steelman offered to sell six marijuana joints for $4 a piece to a confidential informant, Joseph Moore. Officer Branum of the Richmond Police Department gave Moore $24 to make the buy and agreed to pay him $25. The officers fitted Moore with a listening device, a tape recorder, and a microphone. They followed Moore in a separate car as Moore drove to Steelman's residence, a second story apartment on 11th Street in Richmond, Indiana, to make the buy.

Upon arriving at Steelman's apartment, Moore followed Steelman and Steelman's wife into the kitchen. Moore paid Steelman $24 and Steelman's wife handed Moore a plastic sandwich bag with six marijuana joints inside. Moore and Steelman discussed the possibility of purchasing an ounce of marijuana for $200, but Steelman said he would have to go somewhere to get the ounce. After staying 20 to 30 minutes, Moore left. He took the plastic bag with six joints to the police department, and a chemical analysis revealed the joints contained marijuana and weighed 2.4 grams. The Wayne County Surveyor measured the distance from the front of Steelman's residence to the nearby Vaile Elementary School property. The surveyor concluded the distance was 959 feet, accurate to within three one-hundredths of a foot.

Following a jury trial, Steelman was convicted of dealing in marijuana within 1,000 feet of school property, a Class C felony, and he was adjudicated an habitual offender. Steelman now appeals both his conviction and enhanced sentence.

## DISCUSSION AND DECISION

### I

### *Proximity To School Property*

#### (A) Knowledge

■ Steelman first challenges the State's failure to prove he knew he was within 1,000 feet of school property when he sold marijuana to Moore. The statute under which he was convicted, IND.CODE 35–48–4–10, provides, in relevant part:

(a) A person who:

  (1) knowingly or intentionally:

    (A) manufactures;

    (B) finances the manufacture of;

    (C) delivers; or

    (D) finances the delivery of;

  marijuana, hash oil, or hashish, pure or adulterated; or

  (2) possesses, with intent to:

    (A) manufacture;

    (B) finance the manufacture of;

    (C) deliver; or

    (D) finance the delivery of;

  marijuana, hash oil, or hashish, pure or adulterated;

commits dealing in marijuana, hash oil, or hashish, a Class A misdemeanor, except as provided in subsection (b).

(b) The offense is:

  . . . .

  (2) a Class C felony if:

    . . . .

    (B) the person;

      (i) delivered; or

      (ii) financed the delivery of;

    marijuana, hash oil or hashish in or on school property or within one thousand (1,000) feet of school property or on a school bus.

Steelman acknowledges this court has ruled that the State does not have to prove as an element of the crime that the defendant knew he was within 1,000 feet of school property. Nonetheless, he argues the facts in this case are distinguishable from our previous cases because here, the

drug transaction did not take place with the school in plain view. *See, e.g., Reynolds–Herr v. State* (1991), Ind.App., 582 N.E.2d 833 (transaction took place across the street from elementary school); *Berry v. State* (1990), Ind.App., 561 N.E.2d 832 (defendant was inside the school attempting to deal marijuana); *Crocker v. State* (1990), Ind.App., 563 N.E.2d 617, *trans. denied* (defendant admitted his house, where the deal took place, was across the street from a school).

In this case, Steelman argues it is not obvious to a lay person that his apartment is within 1,000 feet of school property. The Vaile Elementary School is two streets away from his apartment, and the school property cannot be seen from the street on which his apartment building is located. He relies further on the fact that it took an expert surveyor to determine his apartment building is within 959 feet of the southern and westernmost corner of the school property.

Steelman further urges this court to reconsider our opinion in *Williford v. State* (1991), Ind.App., 571 N.E.2d 310, *trans. denied,* 577 N.E.2d 963 (DeBruler, J., dissenting). In that case, Williford sold a quarter ounce of marijuana to an undercover police officer in the Four Crowns Tavern in Auburn, Indiana. Following a jury trial, he was convicted of selling marijuana within 1,000 feet of school property.

Although there was no evidence Williford knew the McIntosh Elementary School was within 1,000 feet of the tavern, we affirmed his conviction. We held that the statute does not require the State to prove the defendant knew he was within the legislatively mandated "drug-free zone" which surrounds our schools. "A dealer's lack of knowledge of his proximity to the schools does not make the illegal drug any less harmful to the youth in whose hands it may eventually come to rest." *Id.* at 313. As we said in *Williford,* we say again today: "[T]hose who choose to deal drugs in the vicinity of our schools do so at their own peril." *Id.* at 313. The State did not have to prove Steelman knew he was within 1,000 feet of the Vaile Elementary School when he delivered marijuana to Moore.

(B) School Property Defined

■ Steelman also argues IND.CODE 35–48–4–10(b)(2)(B) is impermissibly ambiguous because the statutory definition of school property, codified at IND.CODE 35–41–1–24.7, is so broad that it could encompass any building rented by a school or the farthest reaches of the grounds adjacent to such a building.

■ A statute will be found unconstitutionally vague only if individuals of ordinary intelligence would find it does not adequately inform them of the proscribed conduct. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 122. The defendant is not free, however, to devise a hypothetical situation which might demonstrate vagueness. *Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 644, *trans. denied.* A statute will be found void for vagueness only if it is vague as applied to the precise circumstances of the case. *Id.* In this case, Steelman does not question that the Vaile Elementary School is school property under IND.CODE 35–41–1–24.7, he challenges the statute simply by questioning whether a building rented by a school would be considered school property. As applied to him the statute is not vague. Steelman's vagueness challenge is therefore without merit.

(C) Measurement

■ Steelman complains next that the statute is impermissibly silent on how the 1,000–foot distance is to be calculated, and he challenges the technique the State used to measure the distance from his apartment to the school property. He recognizes that surveyors measure distances based on "line of sight" calculations. *Appellant's Brief* at 19. Because one would not walk in a straight line from the elementary school to his apartment, however, Steelman argues the "line of sight" measurement is irrational. He tells us that neither defendants nor school children walk through obstacles such as buildings, homes, fences, concrete barriers, creeks, or the like. Steelman complains further that

he was on the second floor of his apartment building, so, at the very least, the surveyor should have measured the distance to the second floor, not the ground level.

When the legislature created the 1,000–foot drug-free zone surrounding our schools, it made no allowance for barriers such as buildings or homes or fences or concrete barriers or creeks. Rather, the legislative intent is plain: to punish those who deal drugs within 1,000 feet of school property. The surveyor's line-of-sight technique to determine the 1,000–foot perimeter around the school property conforms to the legislative intent. There was no error.

■ Next, the State had to prove Steelman delivered marijuana within 1,000 feet of school property. IND.CODE 35–48–4–10(b)(2)(B). In this case, the delivery took place inside of Steelman's second floor apartment. We agree with Steelman, therefore, that the State had to prove the delivery in Steelman's second floor apartment was within 1,000 feet of the elementary school. Contrary to Steelman's assertions, however, the State met its burden of proof.

The surveyor's "line of sight" measurement ran between a point on the far side of Steelman's apartment building to a point on the southwest corner of the school lot. That distance was 959 feet. The surveyor did not need to do a line-of-sight measurement from the school property to where Steelman delivered the marijuana in his second floor apartment because, mathematically, no matter where in his apartment the delivery took place, Steelman had to be within the 1,000–foot zone. Because the surveyor's measurement was sufficient to prove the delivery in Steelman's second floor apartment took place within 1,000 feet of school property, there was no error.

### (D) Equal Protection

■ Steelman also argues the statutory provision increasing the penalty for delivering marijuana within 1,000 feet of school property violates the Equal Protection Clause because it discriminates against minority defendants. He reasons that "[g]iven the demographics of the typical modern urban setting, and the movement toward community schools, inner city black defendants are far more likely to reside in close proximity to a school than is true of their white suburban counterparts." *Appellant's Brief* at 22.

■ In forming his argument, Steelman recognizes and cites *Washington v. Davis* (1976), 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597, 609 for the proposition that "a law neutral on its face ... is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." Proof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Id.* at 242, 96 S.Ct. at 2048, 48 L.Ed.2d at 608. In this case, Steelman completely fails to set forth proof of a racially discriminatory intent or purpose, let alone proof that the statute does, in fact, affect a greater proportion of minority defendants than their "white suburban counterparts." Without proving a racially discriminatory impact, coupled with an intent or purpose to discriminate, Steelman's argument must fail.

## II

### *Prosecutorial Misconduct*

■ Steelman alleges several instances of prosecutorial misconduct during voir dire and opening and closing statements. He admits, however, that he failed to object to any of the alleged instances of prosecutorial misconduct, and he recognizes that failure to object results in waiver of the issue. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119; *Gasaway v. State* (1989), Ind.App., 547 N.E.2d 898, *trans. denied;* *Bergmann v. State* (1985), Ind.App., 486 N.E.2d 653. To avoid waiver, Steelman asks us to review the prosecutor's statements under the doctrine of fundamental error. For an error to be fundamental, and thus transcend the procedural requirement that an objection be made at trial, the error must have been so prejudicial to the defendant's rights that he could not have re-

ceived a fair trial. *Roberts v. State* (1981), Ind.App., 419 N.E.2d 803, 807.[2]

In this case, Steelman has alleged the following portions of the prosecutor's voir dire constituted fundamental error: (1) the prosecutor improperly indoctrinated the prospective jurors instead of simply questioning them, (2) the prosecutor made one-sided and conclusive statements that Steelman was not entrapped, (3) the prosecutor asked whether the prospective jurors believed surveying was an accurate means of measuring distances, (4) the prosecutor gave credibility to the confidential informant's testimony by explaining the care the police used in recording the drug transaction on audio tape, and (5) the prosecutor attacked Steelman's character. After reviewing the voir dire transcript, we conclude Steelman's allegation of fundamental error is without merit. He has failed to prove the prosecutor's comments were erroneous in the first instance.

In defining improperly conducted voir dire examinations, our supreme court has concluded voir dire should not be used to begin trying the case before evidence has been presented. *Hopkins v. State* (1981), Ind., 429 N.E.2d 631, 634. This includes using voir dire to indoctrinate prospective jurors about the facts in the case. *See Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409. Proper examination may include, however, questions designed to disclose the jurors' attitudes about the type of offense charged. *Hopkins, supra,* at 634–35. Similarly, the parties may attempt to uncover the jurors' preconceived ideas about a defense the defendant intends to use. To make these determinations, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id.* at 635.

Notwithstanding Steelman's assertion to the contrary, the prosecutor did not improperly indoctrinate the jurors about the facts in this case. The transcript reveals the prosecutor simply sought to elicit the jurors' preconceived notions about

drug dealers, and about dealing drugs within 1,000 feet of school property. The prosecutor also asked the jurors whether they would be offended by the work of confidential informers, and whether they would think a defendant was wronged if the state sent a person wearing a listening device to buy drugs from a willing and knowledgeable seller. The prosecutor told the jurors that Steelman would argue he was entrapped, and the prosecutor retorted that someone who was able to talk about both price and quantity was not entrapped. As for Steelman's allegations the prosecutor impermissibly attacked his character, the prosecutor properly reminded the jurors that the undercover police officers were not defendants, but they were required to look "the part" to be successful in arresting drug dealers. Apparently Steelman is upset about the suggestion drug dealers are not cut from the same fabric as the "Vienna Choir Boys." *Supplemental Record* at 37. As to these prosecutorial comments, the prosecutor conducted voir dire examination properly.

Steelman also complains the prosecutor erred in voir dire examination when he failed to inform the jurors of the mens rea element in the dealing in marijuana offense. Citing *Hall v. State* (1986), Ind., 497 N.E.2d 916, 918, Steelman argues the omission mandates reversal. In *Hall,* our supreme court observed that "[i]f a jury is misinformed during voir dire of the elements of proof required of the State, then it will receive and evaluate evidence throughout the trial relying on this misinformation." *Id.* at 918. Because our supreme court could not be sure a proper final charge would remove the taint of the misinformation, it ruled the error reversible. In this case, however, even if the omission was error, it was not reversible error because the court properly identified the mens rea element in its preliminary instructions. *Record* at 150. Unlike the jury in *Hall,* therefore, the jury in this case was correctly informed about the elements of the offense before it heard any evidence.

---

**2.** The State appears to argue error cannot be fundamental if the trial court could have corrected the error had the defendant objected. This is not a correct statement of the law.

Steelman's claim of fundamental error is without merit.

As to the prosecutor's opening and closing statements, Steelman complains the prosecutor did not focus on the evidence, but, instead, emphasized the seriousness of dealing drugs, especially near our schools. Steelman completely fails to demonstrate to this court that there was any error in the prosecutor's statements. Dealing drugs *is* a serious offense. The prosecutor permissibly argued to the jury that the evidence overwhelmingly showed Steelman delivered marijuana 959 feet from school property, and that it was a serious offense. Because there was no error in either the opening or closing statement, there could be no fundamental error.[3]

### III

*Habitual Offender Determination*

Steelman argues the evidence was insufficient to sustain his habitual offender adjudication. He alleges the State failed to prove his two prior unrelated felonies and the present underlying felony occurred in the sequence mandated by statute.

IND.CODE 35–50–2–8 provides, in relevant part:

(a) The State may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two (2) prior unrelated felony convictions....

Under this statute, the State must prove each subsequent felony was committed after sentencing was imposed for the prior felony. *Youngblood v. State* (1987), Ind., 515 N.E.2d 522, 527.

The evidence most favorable to the adjudication reveals that in April 1983, Steelman was charged with two counts of theft. On October 11, 1983, the court accepted his guilty plea and sentenced him to a term of two years' imprisonment, with all but 120 days suspended. Less than two years later, on April 1, 1985, Steelman stole a car, pleaded guilty to theft, and on November 4, 1985, the court sentenced him to another term of two years' imprisonment. Steelman did not commit the present offense until November 26, 1990. It does not matter that the State failed to prove when Steelman committed the first offense. The State satisfied IND.CODE 35–50–2–8(b) when it proved Steelman was sentenced for the first offense before he committed the second offense, and that he was sentenced for the second offense before he committed the third offense. The State met its burden of proof. There was no error.

### IV

*Reasonableness of Sentence*

Finally, Steelman argues his sentence is manifestly unreasonable and disproportionate to the nature of his offenses. The court sentenced him to the presump-

---

**3.** We note Steelman explicitly declines to raise an ineffective assistance of counsel claim based on counsel's failure to object to the alleged prosecutorial misconduct. Steelman explains that he does not wish to raise the issue here because he does not want the issue decided on the merits without an evidentiary hearing. To get an evidentiary hearing, he states that he intends to raise his ineffective assistance claim in post-conviction proceedings. As we have repeatedly said, a petitioner may not raise an issue in post-conviction proceedings following a direct appeal without first showing the issue was unascertainable or unavailable on the direct appeal. *Jarrett v. State* (1991), Ind.App., 580 N.E.2d 245, 254, *trans. denied.* Further-

more, when an issue is addressed fully on direct appeal, the issue is *res judicata* and may not be considered in post-conviction proceedings. *Rinard v. State* (1979), 271 Ind. 588, 593, 394 N.E.2d 160, 163. Because we have found the prosecutor did not engage in misconduct, Steelman's trial counsel could not have been ineffective for failing to object. Accordingly, Steelman did not receive ineffective assistance of counsel when counsel did not object to the prosecutor's voir dire and opening and closing statements. As to the prosecutor's failure to identify the mens rea element in his voir dire examination, because we have concluded there was no prejudice, a claim of ineffective assistance of counsel must also fail.

tive term of four years' imprisonment for his conviction for dealing in marijuana within 1,000 feet of school property, a Class C felony. The court then enhanced the sentence by the minimum term of 20 years' imprisonment for the habitual offender adjudication. IND.CODE 35–50–2–8(e).[4]

 Determining appropriate penalties for crimes committed in this State is a function properly exercised by the legislature. A reviewing court will not disturb such determinations unless there is a showing of clear constitutional infirmity. *Collins v. State* (1981), 275 Ind. 86, 90, 415 N.E.2d 46, 51, *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851. When reviewing habitual offender enhancements, the proportionality analysis has two components. First, a reviewing court should inquire into the nature and gravity of the present felony, and second, a reviewing court should consider the nature of the predicate felonies upon which the habitual offender enhancement is based. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 766.

Steelman complains first that his dealing in marijuana offense was relatively minor. In support of his argument, he cites the fact that he delivered the marijuana to his adult cousin, and that he sold only six marijuana cigarettes weighing a total of 2.4 grams, a quantity within the misdemeanor range. Steelman fails to realize, however, that the seriousness of the offense escalated when he delivered the marijuana within 1,000 feet of school property. The offense Steelman committed was a Class C felony, it was not a misdemeanor. He is very much mistaken, therefore, when he calls the offense relatively minor. The four year sentence for dealing marijuana within 1,000 feet of school property was more than reasonable. Likewise, the seriousness of the felony supports enhancing his sentence by 20–years for being an habitual offender.

 We must also consider Steelman's two prior felonies upon which his habitual

offender adjudication is based. Both offenses were Class D felony thefts, committed in 1983 and 1985. Our supreme court has long recognized that the purpose of habitual offender statutes is to punish more severely those defendants who have not been deterred by prior sanctions. *Prentice v. State* (1985), Ind., 474 N.E.2d 496, 503. When short term incarcerations have failed to deter, our legislature has mandated longer sentences for third felony convictions. IND.CODE 35–50–2–8(e). We find Steelman's enhanced sentence is neither unreasonable nor disproportionate to his offenses. There was no error.

The judgment is in all things affirmed.

ROBERTSON and RUCKER, JJ., concur.

---

**4.** Because at least one of Steelman's prior felonies was a Class D felony, and, in fact, both were Class D felonies, the court was allowed to subtract up to ten years from the additional fixed term of 30 years. IND.CODE 35–50–2–8(e).