**Micah D. PERRYMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A04–0406–CR–306.

Court of Appeals of Indiana.

July 19, 2005.

Kenneth R. Martin, Goshen, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Micah D. Perryman was convicted after a jury trial of possession of cocaine in excess of three grams, a Class A felony,[1] and possession of marijuana, a Class A misdemeanor.[2]  He raises three[3] issues,

---

1.  Ind.Code § 35–48–4–1(b).

2.  Ind.Code § 35–48–4–11.

3.  Perryman originally raised two issues, but moved on February 17, 2005 for leave to supplement the record and amend his brief in

but we need address only whether the prosecutor improperly questioned jurors during *voir dire*.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 4, 2003, Corporal Brian Schroth of the Elkhart Police Department supervised a controlled drug buy from a residence at 210 W. Washington St. in Elkhart. Corporal Schroth utilized a confidential informant ("C.I.") who had in the past provided him reliable information. Prior to the buy, the C.I. was searched and given a $20.00 bill that had been photocopied.

Corporal Schroth, the C.I., and another officer arrived at the residence. The C.I. went to the door and Michelle Weekly answered. The C.I. asked for a "twenty," (Tr. at 254) meaning $20.00 of crack cocaine. Weekly handed Perryman a "bag of rocks." (*Id.*) Perryman retrieved one rock of cocaine from the bag and handed the rock to the C.I. The C.I. gave Perryman the $20.00 and left the house.

When police searched the C.I., they found only the rock of cocaine. Corporal Schroth obtained a search warrant that was executed the next day. Lieutenant Leif Freehafer arrived to search Perryman's house and saw Perryman and a white female leave the house and get into a white car. Lt. Freehafer blocked Perryman's car so it could not leave, and shortly thereafter the SWAT team entered the house. Weekly was standing in the middle of the living room, and there was a partially smoked blunt[4] in the ashtray.

A search of the house revealed a vent in the basement that did not appear to be connected to heating equipment. Two bags were found in the vent. One contained 35 bags of individually wrapped rocks of crack cocaine totaling 11.36 grams and the other contained ten individually wrapped bags of marijuana totaling 14.92 grams.

A jury found Perryman guilty of possession of cocaine and marijuana.[5] At sentencing, the trial court found as aggravating circumstances Perryman's criminal history, his status as a probationer at the time of this offense, and the amount of drugs found in the residence. The trial court declined to place any weight on the mitigating circumstances suggested by Perryman and imposed a sentence of fifty years on the Class A felony and one year on the Class A misdemeanor, which sentences were to run concurrently. Additional facts will be provided as necessary in the discussion.

## DISCUSSION AND DECISION

Perryman asserts the prosecutor during *voir dire* improperly "tried the State's case during jury selection and inculcated the prospective jurors with the notion that they were fighting the on-going war against drugs." (Amended Br. of Appellant at 8.)

■ A trial court has broad discretionary power to regulate the form and

---

order to add an additional issue concerning the conduct of *voir dire*. We granted the motion on March 2, 2005, and both parties have submitted amended briefs. Because we reverse on the *voir dire* issue, we need not address the issues Perryman raised originally, *i.e.,* whether the State proved Perryman possessed cocaine and whether he was properly sentenced.

4. A blunt is marijuana rolled into a cigar.

5. Originally, Perryman was charged with dealing cocaine and maintaining a common nuisance as well as the possession charges. Because those charges were dropped, there was no dealing charge before the jury.

substance of *voir dire.* *Von Almen v. State,* 496 N.E.2d 55, 59 (Ind.1986). But the function of *voir dire* examination is not to educate jurors. Rather, it is to ascertain whether jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Id.* Jurors are to be examined to eliminate bias but not to condition them to be receptive to the questioner's position. Questions that seek to shape a favorable jury by deliberate exposure to the substantive issues in the case are therefore improper. *Id.*

At the same time, the court must afford each party a reasonable opportunity to exercise its peremptory challenges intelligently through inquiry. *Id.* Proper examination may therefore include questions designed to disclose the jurors' attitudes about the type of offense charged. *Steelman v. State,* 602 N.E.2d 152, 158 (Ind.Ct. App.1992). Similarly, the parties may attempt to uncover the jurors' preconceived ideas about a defense the defendant intends to use. *Id.* To make these determinations, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id.*

### 1. *Questioning that "tried the case"*

Perryman asserts the prosecutor acted improperly when he attempted on *voir dire* to educate the jury on the issue of possession and to "[try] the case during jury examination" by planting in the jurors' minds "a fact pattern which they will instantly recognize when evidence at trial matches the *voir dire* fact pattern." (Amended Br. of Appellant at 10.)

In *Robinson v. State,* 260 Ind. 517, 520–21, 297 N.E.2d 409, 411–12 (1973) (*"Robinson I"*), our supreme court condemned the practice, one of long standing in our courts, of lawyers trying their cases by their *voir dire* examination of the jury.

It is so engrained in our state as to have become accepted as tactically proper and necessary. In no sense, however, does it coincide with fair trial standards, among the objects of which are to provide an impartial and unbiased jury capable of understanding and intelligently assessing the evidence. Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner .... We think this practice is repugnant to the cause of justice and should terminate.

There, the prosecutor questioned the prospective jurors, ostensibly to determine their feelings about the death penalty. They had indicated they could vote for it if the circumstances warranted. The prosecutor said he wanted to determine the circumstances under which they would vote for the death penalty and asked the jurors two additional questions. One was: "If a father killed his twenty year old daughter because she resisted his sexual advances, could you vote for the death penalty then?" *Id.* at 519, 297 N.E.2d at 411.

Our supreme court noted the facts assumed by that question, although hypothetically stated, "bore a striking resemblance to the facts of the case at hand." *Id.* The victim was the daughter of the accused and she was twenty years old. The question was propounded to five prospective jurors, two of whom ultimately served on the jury, and they were propounded and repeated in the presence of the entire panel. No evidence was presented that Robinson's motive for killing

his daughter was that she resisted his sexual advances.

The supreme court found the questions "clearly improper, prejudicial and deliberately calculated to prejudice the fair trial guaranties of the defendant, by conditioning the prospective jurors to receive the impending evidence, not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination." *Id.* at 520, 297 N.E.2d at 411. The questioning would have warranted reversal of Robinson's conviction, but the court determined Robinson had not preserved the error. *Id.* at 522, 297 N.E.2d at 412.

By contrast, in *Steelman* we found *voir dire* was properly conducted when the prosecutor asked jurors whether they would be offended by the work of confidential informers, and whether they would think a defendant was wronged if the state sent a person wearing a listening device to buy drugs from a willing and knowledgeable seller. The prosecutor told the jurors Steelman would argue he was entrapped, then stated that someone who was able to talk about both price and quantity was not entrapped. We determined the prosecutor "simply sought to elicit the jurors' preconceived notions about drug dealers, and about dealing drugs within 1,000 feet of school property." 602 N.E.2d at 158.

Perryman points to questions by the prosecutor regarding three matters—the issue of constructive possession, how the jury might expect drugs to be packaged, and how it might distinguish a drug dealer from a drug user. As to possession, the prosecutor asked "So, really you can possess something but it doesn't—doesn't have to be on you. It doesn't have to be on your person. Do you think it has anything to do with your ability to have control over it?" (Tr. at 34.)

■ As to drug packaging and distinguishing drug users from dealers, the prosecutor asked a juror to assume the role of a police officer and discussed why drugs might be packaged in unmarked bags. In one exchange, he asked a juror:

> [Prosecutor] [W]hat kind of things would you look for in trying to decide if this guy a[sic] dealer, or a buyer, or user?
>
> [Juror] And I'm still the police officer?
>
> [Prosecutor] ... yeah, you are the police officer.
>
> [Prosecutor] Okay. What about you reach in and there's ten bags there ... [t]en bags, twenty, whatever ... what bearing would that have on your determination, if any?
>
> [Juror] I really don't know.

(Tr. at 84–85). The prosecutor then posed the same question to another juror, who responded "He's either a heavy user or—or he's probably selling those bags ... [t]he more that you have then the more likely you would be selling instead of using." (*Id.* at 85.)

The hypothetical questions the prosecutor posed after asking prospective jurors to assume the role of police officers investigating drug-related crimes are objectionable for the same reason as were the questions in *Robinson I*. There, the State presented no evidence at trial that Robinson was motivated to kill his daughter because she rejected his sexual advances. Similarly, in the case before us, the charge that Perryman had dealt cocaine had been dropped and was not before the jury. The prosecutor's exchanges with the prospective jurors regarding the distinction between users and dealers, like the *Robinson* prosecutor's questions about whether the death penalty would be appropriate if a father killed his daughter because she resisted his sexual advances appear "delib-

erately calculated to prejudice the fair trial guaranties of the defendant, by conditioning the prospective jurors to receive the impending evidence, not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination." 260 Ind. at 520, 297 N.E.2d at 411.

In *Robinson,* the prosecutor had planted "seeds of suspicion" that Robinson had not only killed his daughter but had molested her, even though he was apparently not charged with that crime and no evidence of it was offered. Similarly, in the case before us, the prosecutor's questions planted seeds of suspicion, based on the number of bags of cocaine the evidence later revealed Perryman possessed, that Perryman was a drug dealer, even though no such charge was before the jury. This violated the prohibition stated in *Steelman,* 602 N.E.2d at 158, against hypothetical questions that "suggest prejudicial evidence not adduced at trial." The *voir dire* was improper and we must reverse on that ground.[6]

### 2. *Conditioning the jury to convict on factors other than evidence*

■ Our supreme court has "condemned the practice generally of permitting counsel to 'brainwash' or attempt to condition the jurors to receive the evidence with a jaundiced eye[.]" *Robinson v. State,* 266 Ind. 604, 610, 365 N.E.2d 1218, 1222 (Ind.1977), *cert. denied* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1977), *reh'g denied* 434 U.S. 1041, 98 S.Ct. 785, 54

L.Ed.2d 792 (1978) (*"Robinson II ").* It has been held improper to examine jurors as to how they would act or decide in certain contingencies or in case certain evidence should be developed on at trial. *Robinson I,* 260 Ind. at 521–22, 297 N.E.2d at 412.

In the case before us the prosecutor asked the jurors questions that Perryman characterizes as "[inculcating] the jurors with the notion that they were fighting the ongoing war against drugs." (Amended Br. of Appellant at 8.) For example, the prosecutor asked the jurors "You think drugs are a scary problem here in the county?" (Tr. at 118) and "Are you in agreement that, essentially, it's one of the biggest problems that we have in this county?" (*Id.* at 135.) He stated "Things like theft, robbery, battery, people doing things to one another. It's all related [to drugs]." (*Id.* at 118.) He asked "What do you think would happen if we just said the heck with it, we're not going to try to stop [the drug war]" (*id.* at 119) and "so, we need people out there on the front lines, so to speak fighting that war?" (*Id.*) As discussed above, the prosecutor asked various members of the panel to assume the role of a police officer investigating a drug offense. In response to Perryman's objection the questions and statements were appealing to the prejudices of the jurors, the prosecutor stated "I'm trying to get educated about our pool of jurors in an effort to determine their ability to be fair. I've got to have some understanding of their concepts—" (*Id.* at 120.)[7]

---

**6.** Perryman's counsel diligently objected to the *voir dire* questioning, but did not explicitly request relief in the form of a mistrial or discharge of the panel. The State does not argue Perryman failed to preserve this issue for review by failing to request such relief, nor does it address in its brief the questioning regarding the distinction between drug users and drug dealers. It does address the questioning about how the jurors thought drugs

would be packaged for sale, which it characterizes as the prosecutor's attempt to "detect any potential juror's inability to assess the evidence." (Amended Br. of Appellee at 9.) We note the parties stipulated the cocaine was "packaged in a manner typically used for sale," (Tr. at 344) so there was no such evidence of that nature for the jurors to "assess."

**7.** The State addresses in its brief a number of statements the prosecutor made during *voir*

We agree with Perryman that the *voir dire* was improper on this ground as well as on the ground that, as explained above, it was improperly used to "try the case." We must accordingly reverse.

Reversed.

BARNES, J., and DARDEN, J., concur.

*dire,* but does not address the specific statements noted above regarding the jurors' role in the "drug war" on which Perryman relies in his argument. Rather, it characterizes the *voir dire* as an inquiry whether "evidence or certain facts would cause any particular juror to be biased or prejudiced because of the situation presented by those facts." (Amended Br. of Appellee at 8.) The State also asserts "Defendant objected several times stating that the State was trying to indoctrinate the jury by presenting evidence. The trial court overruled the objections." (*Id.*) (internal citation omitted). As to the statements on which Perryman relies, his objections were, as indicated above, that the questions and statements were appealing to the prejudices of the jurors. At least one of those objections was in fact sustained.

We admonish the State to refrain from such misrepresentations of both the defendant's argument and the record that supports it, and we remind the State that an appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief. *Cox v. State,* 780 N.E.2d 1150, 1162 (Ind.Ct.App.2002). This failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.* However, the State remains responsible for controverting arguments Perryman raises. *See id.*