**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**GLEN E. KOCH II**
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 15 2013, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CLARENCE E. SMITH,                    )
                                      )
    Appellant-Defendant,              )
                                      )
        vs.              )    No. 47A04-1206-CR-315
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-1002-CM-219

**February 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Clarence E. Smith appeals his conviction for class A misdemeanor resisting law enforcement. On appeal, Smith asserts that the prosecutor committed misconduct constituting fundamental error. Smith also asserts that the trial court abused its discretion when it refused one of his proffered jury instructions. Concluding that the prosecutor's actions did not rise to the level of fundamental error and further finding no abuse of discretion, we affirm.

## Facts and Procedural History

On February 24, 2010, sixty-four-year-old Smith went to the Bedford Police Station to lodge a complaint against his ex-son-in-law, Bedford Police Sergeant Greg Hagan. Earlier that day, Smith had passed Sergeant Hagan while driving on State Road 37. Sergeant Hagan then followed Smith to a gasoline station and parked his police vehicle behind Smith's vehicle at the gas pump. Although there was no verbal or physical contact between Smith and Sergeant Hagan, Smith felt harassed. Smith telephoned the Bedford chief of police, Dennis Parsley, and Chief Parsley told Smith that he was free to come to the police station to make a complaint. Smith had lodged complaints against Sergeant Hagan on two previous occasions.

When Smith arrived at the station, he met with the assistant chief of police, Colonel Joseph DeWees. Colonel DeWees escorted Smith to his office to take the complaint. After Smith explained the basis for his complaint, Colonel DeWees informed Smith that he did not think the complaint had any merit, but told Smith that he could fill out a complaint form

anyway. Smith responded by saying that he was tired of the police department "covering up a f**king corrupt police officer." Tr. at 396. Smith then loudly said, "This is bullsh*t." *Id.* at 337, 350, 396. Colonel DeWees responded, "You're not going to talk to me that way in my office, step outside." *Id.* at 337, 397.

As Smith and Colonel DeWees returned to the door that opened into the lobby, Colonel DeWees told Smith to step into the lobby. Smith told Colonel DeWees that he was not going to leave until he spoke with Chief Parsley. Colonel DeWees again told Smith to leave and Smith refused, stating that he wanted to go upstairs and speak to Chief Parsley. While Colonel DeWees was holding onto the lobby door, Smith used both of his hands to shove Colonel DeWees in the shoulder and chest. Colonel DeWees fell backwards onto the stairs. After Colonel DeWees pulled himself up, he again ordered Smith to leave. Smith put his hand on Colonel DeWees's left shoulder and tried to use his body to push past Colonel DeWees. This caused Colonel DeWees to fall backward onto the stairs a second time. Colonel DeWees then got back up, grabbed Smith's left arm, and stated, "that's it, Mr. Smith, you're under arrest." *Id.* at 345, 411.

At this point, Smith declared, "I'm leaving now." *Id.* at 412. Colonel DeWees informed him, "[it's] too late." *Id.* As Colonel DeWees held onto Smith's left arm, Smith spun around and grabbed the door handle with his right arm. Smith began tensing his left arm and moving his shoulder to break Colonel DeWees's grip. Captain James Lindsey was in the hallway and came to assist Colonel DeWees. Captain Lindsey told Smith, "you're under arrest, stop resisting." *Id.* at 347. Captain Lindsey tried to pull Smith's hand off the

3

door handle, to no avail. Finally, Captain Lindsey struck Smith's forearm with his own forearm and managed to break Smith's grip on the door handle. Both Captain Lindsey and Colonel DeWees tried unsuccessfully to get Smith's arm behind his back to handcuff him. Major Brian Turpen ran into the hallway, grabbed Smith by the legs, and took him down to the floor. Captain Lindsey was then able to handcuff Smith.

On February 25, 2010, the State charged Smith with class A misdemeanor battery on a law enforcement officer and class A misdemeanor resisting law enforcement. A jury trial was held on March 8, 2012. The jury found Smith guilty of class A misdemeanor resisting law enforcement and not guilty of battery. This appeal followed.

## Discussion and Decision

### I. Prosecutorial Misconduct

Smith contends that he is entitled to reversal of his conviction based upon prosecutorial misconduct. To convict Smith of class A misdemeanor resisting law enforcement, the State was required to prove that Smith knowingly or intentionally forcibly resisted a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties. *See* Ind. Code § 35-44.1-3-1. Smith contends that the prosecutor committed misconduct by knowingly misstating the law during voir dire and opening and closing arguments and by making remarks that "indoctrinated" the jury with the proposition that the forcible resistance necessary to support a conviction for resisting law enforcement occurs if officers have to do "anything out of the ordinary" to effectuate an arrest. Appellant's Br. at 14-15.

4

In reviewing a properly preserved claim of prosecutorial misconduct, we determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he would not have been otherwise subjected. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). To preserve a prosecutorial misconduct claim for appeal, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Id.* Smith concedes that although he objected to some of the prosecutor's statements in question, he did not request specific admonishment of the jury or move for a mistrial, and therefore he failed to properly preserve his claim. In cases where a prosecutorial misconduct claim has not been properly preserved, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Coleman v. State*, 946 N.E.2d 1160, 1166 (Ind. 2011). The fundamental error exception is extremely narrow and applies only when the error "make[s] 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process … present[ing] an undeniable and substantial potential for harm.'" *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

## A. Voir Dire

Smith first claims that the prosecutor knowingly misstated the law while questioning prospective jurors during voir dire. "The purpose of voir dire is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence." *Joyner v. State*, 736 N.E.2d 232, 237 (Ind. 2000). Proper examination may

include questions designed to disclose the jurors' attitudes about the type of offense charged. *Perryman v. State*, 830 N.E.2d 1005, 1008 (Ind. Ct. App. 2005) *trans. denied* (2007). The parties may also attempt to uncover the jurors' preconceived ideas about a defense the defendant intends to use. *Id*. To reveal the jurors' attitudes and ideas, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id*. However, questions that examine jurors as to how they would act or decide in certain contingencies or when presented with certain evidence are improper. *Id.*

Here, the prosecutor asked prospective jurors various hypothetical questions and made comments characterizing what types of behavior would constitute forcible resistance. For example, at one point the prosecutor explained, "It's something extra ordinary. It's not Superman. It's not getting down into a fight. Anything the officer has to do out of the ordinary would be resisting forcibly okay. Juror eight, are you okay with that?" Tr. at 111. Similarly, the prosecutor asked, "Okay, now juror twenty-one, you're under arrest, okay. And you push off, so you push away from me. Do I have forcible resist?" Tr. at 153. These comments were made and these questions were asked in general terms and were not put into any context specific with this case.

Contrary to Smith's contention, the prosecutor's characterization of what type of behavior would constitute forcible resistance is consistent with current Indiana law. In criticizing the prosecutor's characterization, Smith relies solely upon the language used by our supreme court in *Spangler v. State*, 607 N.E.2d 720 (Ind. 1993). The *Spangler* court held that a person "forcibly resists" when "strong, powerful, violent means are used to evade a law

6

enforcement official's rightful exercise of his or her duties." *Id*. at 723. However, more recently, our supreme court approved the language used in *Spangler* to define "forcibly resist" but went on to modify that language by explaining that "the force involved need not rise to the level of mayhem" and that a "modest level of resistance" such as "stiffening one's arm when an officer grabs hold to position them for cuffing" would suffice. *Graham v. State*, 903 N.E.2d 963, 965-66 (Ind. 2009). The court explained that the "forcible" element is met when evidence demonstrates that "the police ha[ve] to get physical" to secure the defendant's compliance. *Id*. at 966. Accordingly, we disagree with Smith that the prosecutor's characterizations and related questions constituted a misstatement of current Indiana law.

We do, however, agree with Smith that the prosecutor's phrasing in some isolated instances did appear to be directed at ascertaining how jurors would decide when presented with various evidentiary scenarios. This type of questioning was not pervasive and most of the questions were proper and relevant to gauge the jurors' preconceived ideas about what types of behavior would constitute forcible resistance. To the extent that the prosecutor's comments and questions were improperly argumentative or to the extent that the prosecutor may have been using voir dire as an opportunity to educate jurors as to the law, we conclude that an admonishment by the trial court cured any possible prejudice or potential for unfair harm. Following one of Smith's objections, the trial court sua sponte admonished the jury as follows:

> Ladies and gentlemen, the law will be given to you by this Court in its preliminary and final instructions. What you're being asked now may or may

7

not be the, the law in this case. It is hypotheticals that are being presented to you for discussion, that's all. You may continue.

Tr. at 110. Under the totality of the circumstances presented, Smith has failed to demonstrate that the prosecutor's comments and questions regarding forcible resistance during voir dire made it impossible for him to receive a fair trial. Thus, we conclude that the prosecutor's comments and questions did not amount to fundamental error.

### B. Opening and Closing Arguments

Similar to his assertions regarding voir dire, Smith claims that the prosecutor committed misconduct during opening and closing arguments by again characterizing forcible resistance as anything "out of the ordinary" and also repeatedly stating to the jury during closing argument that Indiana law supports this characterization. Tr. at 648. We consider statements made by the prosecutor in the context of the argument as a whole. *Seide v. State*, 784 N.E.2d 974, 977 (Ind. Ct. App. 2003). "It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based on his analysis of the evidence." *Id*.

As we explained above, the prosecutor's characterization of forcible resistance as a very modest type of resistance, although perhaps incomplete and somewhat oversimplified, is indeed consistent with current Indiana law. Even if we were to conclude that any of the prosecutor's comments were improper, we must emphasize the extremely narrow applicability of the fundamental error doctrine. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). The prosecutor's improper actions must present an undeniable and substantial potential for unfair harm. *See id*. When there is overwhelming independent evidence of a

defendant's guilt, improper statements made by a prosecutor may be harmless. *See Hand v. State*, 863 N.E.2d 386, 394-95 (Ind. Ct. App. 2007). The record reveals that, after being told that he was under arrest, Smith spun his body around, grabbed the door handle, refused to let go of the handle, stiffened his arm, and moved his shoulder back and forth, all in an attempt to break Colonel DeWees's grasp and avoid being handcuffed. Indeed, officers had no choice but to grab Smith by the legs and take him to the ground to gain compliance. There is no question that this resistance was forcible. In light of this overwhelming independent evidence of Smith's guilt, we conclude that error, if any, in the prosecutor's comments during opening and closing arguments was harmless rather than fundamental.

## II. Jury Instruction

Smith next contends that the trial court abused its discretion in rejecting his proposed final instruction 7 specifically defining forcible resistance. The purpose of jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009). When evaluating a trial court's rejection of a tendered instruction, we look to: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions. *Short v. State*, 962 N.E.2d 146, 150 (Ind. Ct. App. 2012). As a general rule, instruction of the jury lies with the sound discretion of the trial court and is reviewed only for an abuse of that discretion. *Cravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied* (2006).

9

Smith's proposed final instruction 7 stated,

"One 'forcibly resists' when 'strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.[']" *Aguirre v. State*, 953 N.E.2d 593, 596 (Ind. Ct. App. 2011) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993)). "Forcibly resists" does not include all acts of resistance, obstruction, or interference. *Stansberry v. State*, 954 N.E.2d 507, 510-11 (Ind. Ct. App. 2011) (citing *Spangler*, 607 N.E.2d at 723). "Forcibly resists" excludes some actions that are not passive. *Aguirre*, 953 N.E.2d at 596 (quoting *Spangler*, 607 N.E.2d at 724).

Appellant's App. at 311.

Here, although Smith's proposed instruction correctly recited some of the language of *Spangler* and its progeny, the instruction was an incomplete statement of the current state of the law and thus was properly refused by the trial court. It is well settled that use of certain language in appellate opinions does not necessarily make that language proper for instructions to a jury. *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003). Indeed, as we stated earlier in our discussion, our supreme court has since softened the *Spangler* definition of "forcibly resist." *See Graham*, 903 N.E.2d at 965-66. Due to the court's more recent modification and explanation of the *Spangler* language regarding what constitutes forcible resistance, the instruction tendered by Smith was an incomplete statement of current law. Thus, we cannot say that the trial court abused its discretion in refusing to give the tendered instruction.

On appeal, Smith maintains that the prosecutor's remarks during voir dire and opening and closing arguments regarding forcible resistance necessitated the giving of his instruction defining that term, especially in light of the fact that the substance of the instruction was not

covered by any other instruction.[1]  However, Smith made no such argument to the trial court. To the contrary, our review of the record indicates that following the trial court's rejection of Smith's proposed final instruction 7, Smith made no objection or argument to the trial court regarding the prosecutor's remarks or the necessity for his instruction defining forcible resistance.  Tr. at 622.  Accordingly, we agree with the State that Smith did not afford the trial court the opportunity to consider this argument and/or to correct any error without the need for an appeal.  Indiana Trial Rule 51(C) requires that a party distinctly state the matter to which he objects and the grounds of his objection as a prerequisite for claiming error on appeal regarding the trial court's instruction of the jury.  *Scalissi v. State*, 759 N.E.2d 618, 626 (Ind. 2001).  The purpose of this rule is to protect the trial court from inadvertent error. *Mitchem v. State,* 685 N.E.2d 671, 675 (Ind. 1997).  Absent a specific objection, Smith has waived this argument on appeal.  Therefore, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[1] We note that the trial court also refused the State's proposed final jury instruction 7 defining "forcibly" in the context of resisting law enforcement.  Appellant's App. at 159.