Margarita AGUIRRE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–1101–CR–36.

Court of Appeals of Indiana.

Aug. 25, 2011.

Transfer Denied Dec. 1, 2011.

Barbara J. Simmons, Oldenburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Margarita Aguirre appeals her conviction for resisting law enforcement as a class A misdemeanor.[1]  Aguirre presents one issue, which we revise and restate as whether the evidence is sufficient to sustain her conviction.  We reverse.

The facts most favorable to the conviction follow.  On August 9, 2010, Aguirre was involved in a vehicle accident, and Officer Stephanie Green of the Indianapolis Metropolitan Police Department was dispatched to the scene.  Officer Green arrived at the scene driving a fully marked

---

1.  Ind.Code § 35–44–3–3 (Supp.2006).

police vehicle in her full uniform and identified herself as a police officer to each driver. Upon her arrival, Officer Green found Aguirre standing outside of her car which was parked in a CVS parking lot. The other car was in the middle of the intersection, and the female driver of that car was sitting in a Speedway parking lot.

Officer Green asked Aguirre for her license, registration, and insurance. Aguirre gave the officer her passport and stated that she did not have a license or insurance. Officer Green ran Aguirre's information and determined that her license was suspended.

Aguirre was "moving around and not really paying attention," and Officer Green decided to handcuff Aguirre for officer safety as she was the only officer on the scene. Transcript at 7. The officer testified:

> I advised her turn around put your hands behind your back I am going to place you in handcuffs. At that time she did not do what I asked her to do. Her purse was sitting on the hood of her car she dove her hand into her purse. And for safety reasons I pushed her against her car grabbed one hand and handcuffed it. And, I had to forcibly take her other hand out of her purse and at that time she had her phone on her ear she pulled her phone out hit a button. Started yelling they are arresting me. I took the phone out of her hand. Forced her hand back and handcuffed her.

*Id.*

The State charged Aguirre with resisting law enforcement as a class A misdemeanor and driving while suspended as a class A misdemeanor. On December 3, 2010, a bench trial was conducted. During the bench trial, Aguirre testified as follows:

> [W]e were waiting for the police and uh, several patrols came three (3) or four (4) patrols came at the same time. There were two (2) other three (3) or four (4) officers along with [Officer Green] when she came to me. [Officer Green] asked me for my information. I had already taken whatever I had from my purse. My purse was far away from me I was not near my purse. My phone and my passport were in my hands. And, I gave her my passport. I explained to her—I was explaining to her my license is suspended; I had not finished yet when she just grabbed me and started yelling at me your sus—You're under arrest. At the same time my phone was ringing and I explained to the officer begging I was nervous in shock because of the accident and I was saying ma'am I have a mental [sic] ill child at home I need to let them know I am being arrested. And, she was swearing at me and calling me all these names and treating me very irrationally, very bad as if I am this horrible criminal. I had just not even finished that my licenses were suspended when she had turned me around and grabbed me. And, when she was grabbing my other hand my phone—I had never reached in my purse; my purse was far away. My phone was already in my hand. I just answered and said I am being arrested son. And she grabbed it and put it away and grabbed me and I kept on pleading with her.

*Id.* at 23–24. She also testified that she had no intention of resisting arrest and was merely trying to inform her child that she was being arrested and would not be coming home. The court found Aguirre guilty as charged and sentenced her to time served.

The sole issue is whether the evidence is sufficient to sustain Aguirre's conviction

for resisting law enforcement.[2] When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

The offense of resisting law enforcement is governed by Ind.Code § 35–44–3–3, which provides in relevant part that "[a] person who knowingly or intentionally ... forcibly resists, obstructs, or interferes with a law enforcement officer ... while the officer is lawfully engaged in the execution of the officer's duties ... commits resisting law enforcement, a Class A misdemeanor...." Thus, to convict Aguirre of resisting law enforcement as a class A misdemeanor, the State needed to prove that Aguirre: (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered; (3) with Officer Green while she was lawfully engaged in the execution of her duties as an officer.[3]

Aguirre argues that there was insufficient evidence that she forcibly resisted Officer Green. Specifically, Aguirre argues that she "did nothing more than pull her arm away from the officer while trying to answer her mentally ill son's telephone call" and that "[t]here was no struggle or fight by Ms. Aguirre." Appellant's Brief at 8–9. Aguirre argues that "pulling her arm away when Officer Green grabbed her and threw her against the car as she was trying to answer her son's telephone call may have been inappropriate under the circumstances, but her actions that day did not rise to the level of intentionally forcibly resisting law enforcement." *Id.* at 9–10. Aguirre further argues that "the ambiguous evidence is similar to that in" *Graham v. State*, 903 N.E.2d 963 (Ind.2009), and *Berberena v. State*, 914 N.E.2d 780 (Ind.Ct.App.2009), *trans. denied. Id.* at 9.

In *Graham*, the Indiana Supreme Court described the facts as follows:

> The officers carried Graham down off the porch and ordered him to present his arms for cuffing, which Graham refused to do. (Tr. 281.) Detective William Howell described what happened this way: "I could hear them yelling at him give us your hands, give us your hands. He still resisted to give, not to give the hands. The idea is to put the hands behind the back in handcuffs. And I could hear them yelling at him to give, to give us your hands, give us your hands. He was still not complying even after physically being taken into custody. He was handcuffed at that point." (Tr. 281.) The only SWAT team officer who testified at trial, Angela Maddox, said: "He was then ... we stepped him off the porch and then proned him out, belly down on the ground and, and then put his arms behind his back and hand-

---

**2.** Aguirre does not appeal her conviction for driving while suspended as a class A misdemeanor.

**3.** The charging information alleged that Aguirre "did knowingly or intentionally forci-

bly resist, obstruct or interfere with Stephanie Greene [sic], a law enforcement officer with the IMPD, while the officer was lawfully engaged in the execution of his or her duties." Appellant's Appendix at 13.

cuffed him." (Tr. 324.) Asked whether Graham was cooperating with the officers who were trying to cuff him, she said, "It appeared so. I did not go hands on." (Tr. 324–25.)

903 N.E.2d at 965.

The Court examined what constitutes forcible resistance under the statute for resisting law enforcement. Specifically, the Court held:

> This Court's opinion in *Spangler v. State*, 607 N.E.2d 720 (Ind.1993), examined the elements of the crime of resisting. Justice DeBruler noted that the word "forcibly" modifies "resists, obstructs, or interferes" and that force is an element of the offense. He explained that one "forcibly resists" when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* at 723. Spangler had refused to accept service of process from an officer, walking away from the officer in the face of demands that he accept a protective order. This Court held that such action was resistance to authority but not "forcible" resistance. "It is error as a matter of law to conclude," we said, "that 'forcibly resists' includes all actions that are not passive." *Id.* at 724. Spangler's conviction was reversed.
>
> The force involved need not rise to the level of mayhem. In *Johnson v. State*, 833 N.E.2d 516, 517 (Ind.Ct.App.2005), a defendant in custody "pushed away with his shoulders while cursing and yelling" when the officer attempted to search him. As officers attempted to put him into a police vehicle, Johnson "stiffened up" and the police had to get physical in order to put him inside. *Id.* The Court of Appeals correctly held that Johnson's actions constituted forcible resistance.

*Id.* at 965–966. The Court held that the evidence relating to Graham "[did] not reflect even the modest level of resistance described in *Johnson*," and that "[w]hile even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice," the defendant's mere failure to present his arms for cuffing did not constitute forcible resistance. *Id.* at 966.

In *Berberena*, which is also cited by Aguirre, a police officer "gave several loud verbal commands" for Edwin Berberena to stop. 914 N.E.2d at 780–781. The police officer ordered Berberena to put his hands behind his back, but Berberena did not comply. *Id.* at 781. The officer then "had to forcefully place [Berberena] against the wall of the building. [Berberena's] chest was facing the building, and [Officer Amberger] had to struggle with him to grab his hands and place them in handcuffs." *Id.* The trial court found Berberena guilty of resisting law enforcement. *Id.* On appeal, the court held that the officer's testimony "that he struggled to place the handcuffs on Berberena's wrists [was] ambiguous." *Id.* at 782. The court also observed that the officer "did not testify, and there [was] no evidence [ ] that Berberena stiffened his arms or otherwise 'made threatening or violent actions' to contribute to the struggle." *Id.* (quoting *Ajabu v. State*, 704 N.E.2d 494, 496 (Ind.Ct.App.1998)). Lastly, the court observed that the officer "could not remember what Berberena was doing with his hands, and the struggle did not last very long." *Id.* The court concluded that the evidence was insufficient to support Berberena's conviction. *Id.* at 783.

Here, the lack of evidence is similar to that in *Graham* and *Berberena*. The State did not present any evidence that Aguirre herself used force or "made threatening or violent actions" to contribute to the struggle with Officer Green. *See Ajabu*, 704 N.E.2d at 496. While Officer Green testified that Aguirre "dove her hand into her purse," which was sitting on

the hood of the car, Transcript at 7, "[i]t is error as a matter of law to conclude ... that 'forcibly resists' includes all actions that are not passive." 903 N.E.2d at 965. Indeed, the record reveals that Aguirre was attempting to answer her cell phone. The record does not indicate any evidence that Aguirre used the requisite force via "strong, powerful, violent means" to evade Officer Green's rightful exercise of her duties. *See Spangler,* 607 N.E.2d at 723. There is no evidence that Aguirre stiffened her arms, like the defendant in *Johnson,* was violent or threatening, or otherwise forcibly resisted Officer Green.

Based upon our review of the record, we conclude that there is insufficient evidence of probative value from which the trial court could reasonably have found beyond a reasonable doubt that Aguirre committed resisting law enforcement as a class A misdemeanor. *See Colvin v. State,* 916 N.E.2d 306, 309 (Ind.Ct.App.2009) (reversing a resisting law enforcement conviction because the "evidence [did] not support a reasonable inference that Colvin did more than passively resist the officers"), *trans. denied; Ajabu,* 704 N.E.2d at 496 (holding that while the evidence established some resistance by the defendant, the record failed to disclose any evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that the defendant acted forcibly where the defendant twisted and turned a little as he held onto his flag); *Braster v. State,* 596 N.E.2d 278, 280 (Ind.Ct.App.1992) (holding that the evidence was insufficient to support a resisting law enforcement conviction where the defendant refused to obey commands and an officer had to "sweep [defendant's] legs out from under him" in the course of the arrest), *reh'g denied, trans. denied.*

For the foregoing reasons, we reverse Aguirre's conviction for resisting law enforcement as a class A misdemeanor.

Reversed.

KIRSCH, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I must respectfully dissent. While Aguirre's version of events would lead one to conclude that she is not guilty of resisting law enforcement, this Court is not permitted to reweigh the evidence. And the evidence most favorable to verdict is Officer Green's testimony that when she grabbed Aguirre's hand to place it in handcuffs, Aguirre pulled her hand away. Officer Green had to force Aguirre's hand into handcuffs. This is sufficient to sustain Aguirre's conviction for resisting law enforcement. *See Johnson v. State,* 833 N.E.2d 516, 518–19 (Ind. Ct.App.2005) (affirming the defendant's conviction for resisting law enforcement where the defendant " 'stiffened up,' requiring that the officers exert force to place him inside the transport vehicle"). Therefore, I would affirm Aguirre's conviction.