Wayne CAMPBELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 13A01–0308–CR–289.

Court of Appeals of Indiana.

Jan. 14, 2005.

---

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Wayne Campbell appeals his convictions on two counts of Attempted Murder,[1] a class A felony, and Burglary Resulting in Serious Bodily Injury,[2] a class A felony, claiming that reversal is warranted because: (1) his right against self-incrimination was violated when police officers interrogated him before he was given the *Miranda*[3] warnings; (2) the evidence was insufficient to support the convictions; (3) the enhanced conviction for burglary resulting in serious bodily injury cannot stand because the enhancement was based upon the same act used to support an attempted murder charge; and (4) he was improperly sentenced.

Concluding that the trial court properly admitted the statements that Campbell made to the police officers into evidence because he was not in custody when the statements were made, we find no error with respect to this issue. We also conclude that the evidence was sufficient to support Campbell's convictions, but find that convictions for both attempted murder and burglary as a class A felony violate double jeopardy principles. Finally, we conclude that the sentence imposed on the offenses was not inappropriate. Thus, we affirm in part, reverse in part, and remand this cause with instructions that the trial court: (1) vacate the conviction for class A felony burglary; (2) enter judgment as a class B felony burglary; and (3)

resentence Campbell on the class B felony burglary.

## FACTS

On November 15, 1991, Campbell purchased approximately twenty-two acres in Crawford County, and used the land primarily for hunting and camping. To access his property, Campbell used a private road that passed through the properties of his neighbors, Jean and Alva Kincaid (collectively, the Kincaids), and Don Mattox. This easement ran directly between the Kincaids' house and garage.

Sometime in January 2000, Campbell moved into a trailer on the land. Almost from the beginning, various altercations occurred among the Kincaids, Mattox and Campbell regarding the use of the easement. For instance, on one occasion, Alva installed metal speed bumps across the easement, claiming that Campbell had been speeding across his property. Alva and Mattox also began running ATVs down the easement, placing ruts in the road. At some point, Alva allegedly blocked the road to Campbell's residence with a truck and a tractor. The situation worsened to the point that Alva and Campbell sought—and obtained—protective orders against one another.

On November 7, 2001, Campbell hunted on his property and went into town to have supper at a restaurant. When Campbell returned, he noticed that several rocks were lying in the road. Upon closer examination, Campbell observed that shards of glass had been attached to the rocks. Campbell then picked up a rock and threw it at the Kincaids' garage. Alva told Jean to call the police, whereupon Alva picked up his gun, went outside, and confronted

---

1. Ind.Code § 35–42–1–1(1); Ind.Code § 35–41–5–1.

2. Ind.Code § 35–43–2–1.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Campbell. Campbell then grabbed his shotgun and fired into the air.

At some point, Campbell pointed his gun at Alva and ordered him to drop his weapon. Instead, Alva tried to grab Campbell's gun. However, Campbell immediately hit Alva several times in the head with the barrel of the shotgun. During the altercation, Campbell bent the barrel of the shotgun and also broke the stock. As a result of the attack, Alva's skull was fractured, causing major brain damage. Alva is currently unable to talk and is in need of constant medical care.

Immediately after striking Alva, Campbell proceeded to the Kincaids' house where he kicked in the door and encountered Jean. At that time, she was talking with a State Police officer on the telephone. Campbell grabbed the telephone and tossed it to the ground. Jean then ran to the porch and Campbell followed. He hit Jean in the face with the shotgun and struck her four or five more times while she was on the porch, rendering her unconscious. Jean's injuries included two broken facial bones, a puncture wound, bruises, swelling and broken teeth. Campbell then fled the scene in his vehicle.

Shortly thereafter, Jean regained consciousness and walked to the garage where she observed Alva laying on the floor in a pool of blood. Jean then drove to a neighbor's house, where she reported that Alva was dying.

Hours later, Campbell returned to the Kincaids' house armed with three guns that he had retrieved from his parents' house, where he encountered several police officers. At that time, the officers suspected Campbell was involved in the altercation with the Kincaids. One of the officers yelled that Campbell was armed and all drew their guns on Campbell and ordered him to drop his weapon. Throughout a standoff that lasted nearly thirty minutes, Campbell never fully complied with the officers' commands. To be sure, Campbell refused to submit to a pat down search, and he continued shouting and being uncooperative.

At some point, while several officers were pointing their guns at Campbell, Detective Philip Stowers of the Indiana State Police Department asked, "what is going on?" Tr. p. 251, 819. Campbell then described the events, whereupon he inquired into the Kincaids' condition. Campbell commented that he must have "really f* * * *d them up," that he wished he had raped Jean, and that it was his hope that both of the Kincaids would die. Tr. p. 352, 892. Eventually, the officers rushed Campbell where they were able to subdue and handcuff him.

Campbell was initially charged with two counts of attempted murder on November 9, 2001. A jury trial commenced on July 30, 2002, but, on August 5, 2002, the jury informed the trial court that it was unable to reach a verdict, and a mistrial was declared. Thereafter, on August 29, 2002, the State refiled the charges, adding two additional counts: Burglary Resulting in Bodily Injury, a class A felony, and Battery, a class C felony. However, the State dismissed the battery charge and filed an amendment to the Burglary Resulting in Serious Bodily Injury charge.

Then, on January 27, 2003, the State charged Campbell with Battery, a class C felony, and Aggravated Battery as a class B felony under different cause numbers. Trial by jury was held under the various cause numbers from June 2, 2003, through June 10, 2003. The State did, however, dismiss one of the battery counts on the first day of trial.

In the end, Campbell was convicted of two counts of attempted murder, burglary resulting in bodily injury, a class A felony,

aggravated battery, a class B felony, and battery as a class C felony. At the sentencing hearing that was conducted on July 10, 2003, Campbell was sentenced to forty-five year consecutive sentences on each count of attempted murder with five years of each sentence suspended. Campbell was also ordered to serve a forty-year sentence for burglary resulting in serious bodily injury to be served concurrently with the attempted murder sentences. The trial court then merged the battery and aggravated battery convictions with the attempted murder convictions, thus sentencing Campbell to an aggregate term of ninety years with ten of those years suspended.

In considering what sentence to impose, the trial court based Campbell's enhanced sentence upon the following aggravating factors: (1) Campbell had the opportunity to withdraw before attacking Jean; (2) a less than enhanced sentence would depreciate the seriousness of the crime; (3) Campbell is in need of corrective treatment that would best be found in a penal facility due to his prior criminal history—which included convictions for criminal recklessness and criminal mischief—and incarceration and the high risk that he will commit additional offenses; (4) Campbell lacked remorse; (5) he violated a protective order when he committed these offenses; and (6) Campbell has a history of criminal and anti-social behavior that has not been deterred by past legal action. Campbell now appeals.

### DISCUSSION AND DECISION

#### I. Statements Allegedly Made in Violation of Miranda

■ Campbell first claims that his conviction may not stand in light of the statements that he gave to the police officers while being held at gunpoint. In essence, Campbell contends that the statements he made to Detective Stowers at the scene violated his right against self-incrimination because he had not been issued the *Miranda* warnings. The State counters, however, that Officer Stowers's inquiry to Campbell at the scene as to "what was going on" was not "meant to be an interrogation and Campbell was ... not in custody." Appellee's Br. p. 6.

■ In resolving this issue, we first note that the admissibility of evidence is left to the sound discretion of the trial court, and we will review the ruling under an abuse of discretion standard. *Wright v. State*, 766 N.E.2d 1223, 1229 (Ind.Ct.App. 2002). Also, when reviewing a ruling on a motion to suppress a statement, this court examines the evidence most favorable to the trial court's ruling together with any uncontradicted evidence. *Id.*

■ We next observe that the warnings set forth in *Miranda* require a police officer to inform a suspect who is in custody that any statement may be used against him, that he has the right to legal counsel, and that if he cannot afford an attorney one will be appointed for him. *See Furnish v. State*, 779 N.E.2d 576, 578 (Ind.Ct. App.2002), *trans. denied.* The warnings must be issued to any suspect in custody who is subject to interrogation. *Id.*

■ This court has determined that an accused is "in custody" and is entitled to the benefit of the *Miranda* warnings if a reasonable person in the same circumstances would not feel free to leave or if his freedom of movement was deprived in any significant way. *Gibson v. State*, 733 N.E.2d 945, 953 (Ind.Ct.App.2000). Whether an accused is in custody depends on objective circumstances, not upon the subjective beliefs of the interrogating officers or the accused. *Id.* Moreover, the United States Supreme Court has determined that an arrest of an individual re-

quires physical force or, where that is absent, the submission to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 625–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

In this case, the facts show that when Detective Stowers arrived at the scene, several officers had Campbell surrounded at gunpoint. Tr. p. 248, 342. And Campbell was armed with a pistol. Tr. p. 342–44, 818. In other words, it is apparent that Detective Stowers arrived in the midst of a "standoff" between Campbell and the other officers. When Campbell made the statements to the officers, Campbell had not yielded to the show of police authority. Moreover, when Campbell made his remarks to Detective Stowers, Campbell was still refusing to submit to authority, inasmuch as he would not place his hands behind his back or submit to a pat down search so that the officers could confirm that he was no longer armed.

In light of these circumstances, it is apparent that Campbell was not "in custody" when he responded to the officers' inquiries. *See Hodari D.*, 499 U.S. at 625–26, 111 S.Ct. 1547. As a result, the trial court did not err in admitting the statements into evidence.

## II. Sufficiency of the Evidence

■ Campbell next claims that the evidence was insufficient to support the attempted murder of Jean. Specifically, Campbell contends that this conviction cannot stand because the State failed to show that he exhibited the specific intent to kill her.[4]

■ Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1029 (Ind.Ct.App.2002). We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* In the circumstances such as those presented here, we consider the evidence as presented at trial, including that which may have been erroneously admitted. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997). Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Armour v. State*, 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.* Inconsistencies in the evidence are for the jury to evaluate, and to determine what evidence to believe. *Allen*, 813 N.E.2d at 369.

■ To convict Campbell of attempted murder, the State was required to prove beyond a reasonable doubt that Campbell acted with the specific intent to kill and that he engaged in conduct constituting a substantial step toward the killing of the Kincaids. I.C. § 35–42–1–1; I.C. § 35–41–5–1(a) (1998). The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind.2002). Additionally, our supreme court has recognized that the "[i]ntent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime." *Id.* at 805 (citing *Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992)).

In addition to the statements that Campbell made to Detective Stowers, the evidence established that Campbell hit Jean five times in the head with the stock of a shotgun. Tr. p. 687–88. He beat her until she was rendered unconscious, and he may have believed that she was dead or dying. The blows were hard enough to break two bones and cause a number of other injuries. Tr. p. 694. At trial, a physician testified that striking someone

---

4. Campbell does not challenge the attempted murder conviction with respect to Alva.

with a gun resulting in a blunt force injury could fracture a skull and a second similar hit would likely kill an individual. Tr. p. 388.

In light of the above evidence, the jury could reasonably find that Campbell's conduct and the surrounding events evidenced his intent to kill Jean. As a result, Campbell's challenge to the sufficiency of the evidence fails, and his conviction for attempted murder stands.

### III. Conviction and Sentence for Both Burglary and Attempted Murder As Class A Felonies

█ Campbell next argues that his convictions for both attempted murder and burglary may not stand in light of double jeopardy concerns. Specifically, Campbell maintains that the conviction for burglary as a class A felony must be reduced to a class B felony because the elevated burglary charge was based upon the same act that was used to support the attempted murder charge.

In resolving this issue, we first note that the State has conceded this error. Appellee's Br. p. 12. Moreover, in *Davis v. State,* our supreme court determined that "where a single act forms the basis of both a Class A felony burglary conviction and also the act element of an attempted murder, the two cannot stand." 770 N.E.2d 319, 324 (Ind.2002).

In this case, the information charging Campbell with attempted murder states in relevant part:

On or about November 7, 2001 ... Wayne Campbell with the intent to kill another human being, to wit: Jean Kincaid; engaged in conduct that constituted a substantial step toward the commission of the crime of murder to wit: Wayne Campbell repeatedly hit Jean Kincaid ....

Appellant's App. p. 97. The burglary information provided:

·· On or about November 7, 2001 ... Wayne Campbell did break and enter the building of Alva and Jean Kincaid, to wit; residence; with the intent to commit a felony therein, to wit: Battery Resulting in Serious Bodily Injury; said act resulting in bodily injury or serious bodily injury to Jean Kincaid, to wit: cuts, bruises, lacerations, broken facial bones, extreme pain, unconsciousness and/or knocked out teeth.

Appellant's App. p. 546.

In examining the above, it is apparent that the single act that formed the basis of the elevated burglary charge also formed the basis of the attempted murder charge. The evidence in the record establishes that the physical attacks referenced in the attempted murder charge were those that produced the injuries that were alleged in the charging information for class A felony burglary. Appellant's App. p. 97, 546. As a result, we are compelled to reverse the burglary conviction and remand this cause to the trial court with instructions that it enter a judgment of conviction for burglary as a class B felony. See Davis, 770 N.E.2d at 325. We also instruct the trial court to resentence Campbell on this offense.

### IV. Sentencing

Finally, Campbell argues that he was erroneously sentenced. Specifically, Campbell argues that the sentence was inappropriate because two of the aggravating factors identified by the trial court were improper, and a mitigating factor was ignored. Additionally, Campbell urges that the sentence was inappropriate in light of his character and the nature of the offense.

█ In resolving this issue, we first note that a trial court's discretion in sen-

tencing includes the ability to determine whether a presumptive sentence should be increased because of aggravating circumstances or decreased because of mitigating circumstances. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind.2000). When a defendant is sentenced to a term of imprisonment that is greater than the presumptive sentence, this court will examine the record to ensure that the trial court explained its reasons for selecting the sentence it imposed. In particular, the sentencing court's statement of reasons must include: (1) an identification of the significant aggravating and mitigating circumstances; (2) specific facts and reasons that led the court to find the existence of such circumstances; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Id.* One aggravating circumstance, alone, is sufficient to justify an enhanced sentence. *Bonds v. State*, 729 N.E.2d 1002, 1005 (Ind.2000).

 Additionally, with respect to mitigating factors, this court will conclude that a trial court overlooked a mitigating circumstance only when the record contains substantial evidence of a significant mitigating circumstance. *Creager v. State*, 737 N.E.2d 771, 782 (Ind.Ct.App.2000). Moreover, a trial court is not required to find the presence of mitigating circumstances or to give the same weight or credit to mitigating evidence as does the defendant. *Id.*

 In this case, Campbell argues that two of the aggravating factors found by the trial court were improper. In particular, Campbell asserts that the "depreciate the seriousness of the crime" aggravator

was improper because that circumstance "is supposed to be used to support the trial court's refusal to impose a less than presumptive sentence." Appellant's Br. p. 25 (citing *Leffingwell v. State*, 793 N.E.2d 307, 310 (Ind.Ct.App.2003)). Here, the trial court expressly justified the enhanced sentence on the grounds that anything less would depreciate the seriousness of the offense. Hence, we agree with Campbell that the trial court improperly relied upon this factor when deciding that imposing less than an enhanced sentence would depreciate the seriousness of the offense.

 Campbell also argues that the trial court's determination that he was in need of corrective treatment that would best be served in a penal facility was not a valid aggravating factor. In support of this contention, Campbell maintains that the trial court failed to adequately explain its reasons for considering this an aggravating circumstance. Contrary to Campbell's claim, the trial court noted at the sentencing hearing that Campbell should be rehabilitated in a penal facility in light of the high risk that he would commit other crimes. This aggravator was also based upon the fact that Campbell had a prior criminal record. Appellant's App. p. 607–08.

 Also, as set forth in the *FACTS*, the trial court found a number of additional aggravating circumstances used to support the enhanced sentence that Campbell has not challenged. These factors included his lack of remorse, the violation of a protective order, and his criminal history. Inasmuch as the existence of one aggravating circumstance will justify an enhanced sentence, we decline to set the sentence aside on this basis.[5]

5. We note that Campbell has not advanced any claim under *Blakely v. Washington*, — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), regarding the propriety of the aggravating circumstances that were found by the trial court. Even had such an argument been

Campbell also urges that his sentence was erroneous because the trial court failed to find that Alva's instigation of the episode constituted a significant mitigating factor. We note, however, that Campbell's contention is based solely upon his own self-serving testimony. The record shows that while an ongoing feud existed between Campbell and Alva, the present conflict began when Campbell stopped his vehicle and threw rocks from the road by the Kincaids' residence. Tr. p. 678, 801. And Jean testified that Campbell was throwing rocks at their garage. Tr. p. 678. Inasmuch as the record is limited in light of Alva's inability to testify about the circumstances, the trial court could reasonably conclude that it was Campbell who instigated the confrontation. As a result, Campbell may not successfully claim that this was a mitigating factor that the trial court had overlooked. *See Creager*, 737 N.E.2d at 782 (holding that there must be substantial evidence of a significant mitigating circumstance).

Finally, Campbell claims that his sentence must be set aside because it was inappropriate in light of his character and the nature of the offense. In accordance with Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate." The "nature of the offense" portion of the standard speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *See Williams v. State*, 782 N.E.2d 1039, 1051 (Ind.Ct.App. 2003). That is, the presumptive sentence is intended to be the starting point for the court's consideration of the appropriate sentence for the particular crime committed. *Id.* On the other hand, the character of the offender portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Id.*

In this case, Campbell's poor character is evidenced by his criminal history, the violation of a protective order, and his antisocial behavior. Campbell's poor character was also established when it was shown that he "flipped off" Detective Stowers and made threatening remarks to him during the sentencing hearing. Tr. p. 1025.

The evidence also established that the commission of these offenses was of a particularly serious nature. The injuries that Campbell inflicted upon Alva caused permanent brain damage that will always require Alva to receive constant care. And the injuries rendered Alva unable to communicate. Tr. p. 386–87. Campbell's crimes also caused long-term disfigurement to Jean's face, as well as continued mental anguish. Tr. p. 1031–32. In light of these circumstances, we conclude that Campbell's sentence was appropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

As the result of our discussion of the issues above, we conclude that the admission of the statements that Campbell made to Detective Stowers was not error. We also find that the evidence presented at trial was sufficient to support Campbell's convictions and that he was properly sentenced. But Campbell's conviction for burglary as a class A felony must be vacated, and this cause must be remanded to the trial court with instructions that the

raised, the existence of prior convictions is exempt from the *Blakely* analysis. *Id.* at 2536. And, as noted above, the existence of one aggravating factor—including a defendant's prior criminal history—will support the imposition of an enhanced sentence. *Bonds*, 729 N.E.2d at 1005.

burglary conviction be entered as a class B felony in light of double jeopardy principles. We also instruct the trial court to resentence Campbell on this offense. In all other respects, the judgment of the trial court is affirmed.

KIRSCH, C.J., concurs.

ROBB, J., concurs with opinion.

ROBB, Judge, concurs with separate opinion.

I concur, but write separately to emphasize that our holding with respect to the *Miranda* issue is specific to the unique facts of this case.

We commonly say that a person is "in custody" for purposes of *Miranda* if the individual's freedom has been deprived in a significant way or if a reasonable person in the circumstances would believe that he or she is not free to leave. *See Mesarosh v. State*, 801 N.E.2d 200, 202 (Ind.Ct.App. 2004). In this case, Campbell's freedom clearly was deprived in a significant way and no reasonable person in his circumstances would believe that he was free to leave. I nonetheless agree with the majority that Campbell, engaging police officers in an armed standoff, was not "in custody" such that *Miranda* warnings were required. It is apparent that our common definition of "custody" fails in this unique circumstance. I caution only that our holding should not be construed as a general extension of the traditional definition of "custody" and a corresponding limitation on the situations in which *Miranda* warnings must be given. In a standard traffic stop or other investigative situation, the long-standing rules still apply.