# FOR PUBLICATION



FILED

Jan 28 2014, 11:32 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**WAYNE CAMPBELL**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WAYNE CAMPBELL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 13A05-1304-PC-201 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable Larry R. Blanton, Special Judge
Cause No. 13C01-0606-PC-3

**January 28, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Wayne Campbell appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his convictions for two counts of attempted murder and one count of Class B felony burglary. We affirm.

**Issues**

The issues before us are:

I.  whether Campbell's trial counsel was ineffective in the manner in which he conducted voir dire; and

II. whether trial counsel was ineffective for failing to object to a supplemental instruction given to the jury during its deliberations.

**Facts**

On direct appeal, we described the evidence most favorable to Campbell's convictions as follows:

> On November 15, 1991, Campbell purchased approximately twenty-two acres in Crawford County, and used the land primarily for hunting and camping. To access his property, Campbell used a private road that passed through the properties of his neighbors, Jean and Alva Kincaid (collectively, the Kincaids), and Don Mattox. This easement ran directly between the Kincaids' house and garage.
>
> Sometime in January 2000, Campbell moved into a trailer on the land. Almost from the beginning, various altercations occurred among the Kincaids, Mattox and Campbell regarding the use of the easement. For instance, on one occasion, Alva installed metal speed bumps across the easement, claiming that Campbell had been speeding across his property. Alva and Mattox also began running ATVs down the easement, placing ruts in the road. At some point, Alva allegedly blocked the road to Campbell's residence with a truck and a tractor. The situation worsened to the point that

2

Alva and Campbell sought—and obtained—protective orders against one another.

On November 7, 2001, Campbell hunted on his property and went into town to have supper at a restaurant. When Campbell returned, he noticed that several rocks were lying in the road. Upon closer examination, Campbell observed that shards of glass had been attached to the rocks. Campbell then picked up a rock and threw it at the Kincaids' garage. Alva told Jean to call the police, whereupon Alva picked up his gun, went outside, and confronted Campbell. Campbell then grabbed his shotgun and fired into the air.

At some point, Campbell pointed his gun at Alva and ordered him to drop his weapon. Instead, Alva tried to grab Campbell's gun. However, Campbell immediately hit Alva several times in the head with the barrel of the shotgun. During the altercation, Campbell bent the barrel of the shotgun and also broke the stock. As a result of the attack, Alva's skull was fractured, causing major brain damage. Alva is currently unable to talk and is in need of constant medical care.

Immediately after striking Alva, Campbell proceeded to the Kincaids' house where he kicked in the door and encountered Jean. At that time, she was talking with a State Police officer on the telephone. Campbell grabbed the telephone and tossed it to the ground. Jean then ran to the porch and Campbell followed. He hit Jean in the face with the shotgun and struck her four or five more times while she was on the porch, rendering her unconscious. Jean's injuries included two broken facial bones, a puncture wound, bruises, swelling and broken teeth. Campbell then fled the scene in his vehicle.

Shortly thereafter, Jean regained consciousness and walked to the garage where she observed Alva laying on the floor in a pool of blood. Jean then drove to a neighbor's house, where she reported that Alva was dying.

Hours later, Campbell returned to the Kincaids' house armed with three guns that he had retrieved from his parents' house, where he encountered several police officers. At that time, the officers suspected Campbell was involved in the

3

altercation with the Kincaids. One of the officers yelled that Campbell was armed and all drew their guns on Campbell and ordered him to drop his weapon. Throughout a standoff that lasted nearly thirty minutes, Campbell never fully complied with the officers' commands. To be sure, Campbell refused to submit to a pat down search, and he continued shouting and being uncooperative.

At some point, while several officers were pointing their guns at Campbell, Detective Philip Stowers of the Indiana State Police Department asked, "what is going on?" Campbell then described the events, whereupon he inquired into the Kincaids' condition. Campbell commented that he must have "really f* * * *d them up," that he wished he had raped Jean, and that it was his hope that both of the Kincaids would die. Eventually, the officers rushed Campbell where they were able to subdue and handcuff him.

Campbell was initially charged with two counts of attempted murder on November 9, 2001. A jury trial commenced on July 30, 2002, but, on August 5, 2002, the jury informed the trial court that it was unable to reach a verdict, and a mistrial was declared. Thereafter, on August 29, 2002, the State refiled the charges, adding two additional counts: Burglary Resulting in Bodily Injury, a class A felony, and Battery, a class C felony. However, the State dismissed the battery charge and filed an amendment to the Burglary Resulting in Serious Bodily Injury charge.

Then, on January 27, 2003, the State charged Campbell with Battery, a class C felony, and Aggravated Battery as a class B felony under different cause numbers. Trial by jury was held under the various cause numbers from June 2, 2003, through June 10, 2003. The State did, however, dismiss one of the battery counts on the first day of trial.

In the end, Campbell was convicted of two counts of attempted murder, burglary resulting in bodily injury, a class A felony, aggravated battery, a class B felony, and battery as a class C felony. At the sentencing hearing that was conducted on July 10, 2003, Campbell was sentenced to forty-five year consecutive sentences on each count of attempted murder with five years of each sentence suspended. Campbell was also

4

ordered to serve a forty-year sentence for burglary resulting in serious bodily injury to be served concurrently with the attempted murder sentences. The trial court then merged the battery and aggravated battery convictions with the attempted murder convictions, thus sentencing Campbell to an aggregate term of ninety years with ten of those years suspended.

Campbell v. State, 820 N.E.2d 711, 715-17 (Ind. Ct. App. 2005).

On direct appeal, we held that double jeopardy principles required Campbell's conviction for Class A felony burglary resulting in bodily injury to be reduced to a Class B felony. Id. at 719. We rejected Campbell's arguments regarding an alleged Miranda violation, the sufficiency of the evidence, and the appropriateness of his sentence. Our supreme court granted transfer for the limited purpose of revising Campbell's aggregate sentence to seventy years via an unpublished order, and the United States Supreme Court denied certiorari.

Campbell subsequently filed a pro se PCR petition, which was amended four times. Among other claims, Campbell asserted that trial counsel was ineffective in two respects: (1) by engaging in improper voir dire during jury selection; and (2) by failing to object to a jury instruction regarding the definition of "intentionally" that was given during deliberations in response to a jury question requesting "the definition of intent." Trial Tr. p. 993. The post-conviction court denied Campbell's petition, and he now appeals pro se.[1]

**Analysis**

---

[1] Campbell's fourth amended PCR petition raised a number of issues other than the two we have mentioned, but he does not make any argument regarding them on appeal.

PCR proceedings are civil in nature, and a defendant bears the burden of establishing his or her claims by a preponderance of the evidence. Smith v. State, 822 N.E.2d 193, 198 (Ind. Ct. App. 2005), trans. denied. A defendant appealing the denial of a PCR petition is challenging a negative judgment. Ward v. State, 969 N.E.2d 46, 51 (Ind. 2012). Thus, to the extent this appeal turns on factual issues, Campbell must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. See id. "In other words, the defendant must convince this court that there is no way within the law that the court below could have reached the decision it did." Smith, 822 N.E.2d at 198. We will not defer to the PCR court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." Id.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ward, 969 N.E.2d at 51 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. Id. Trial counsel is given considerable discretion in choosing strategy and tactics, and we accord deference to such decisions. Id. There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. Id.

To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability

6

sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either the performance or prejudice prong of Strickland will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006).

## *I. Voir Dire*

Campbell contends trial counsel demonstrated ineffectiveness in the way in which he questioned prospective jurors during voir dire. In particular, Campbell takes issue with trial counsel asking the prospective jurors whether they believed they could act in self-defense if "[y]ou are standing in front of your house and this person is out in the street in front of your house throwing rocks at you," and other questions related to self-defense. Trial Tr. p. 69. He also asserts it was improper for trial counsel to ask prospective jurors questions related to the law of attempt, using the following scenario:

> For example, we attempted burglary. You are going to break into someone's house and steal their stuff. So, the law of intent would say first of all, (inaudible) you were intending to break into that house. And then secondly, that is not good enough. A lot of things we intend to do, or like to do, or want to do is not a crime. You have got to couple it with action (inaudible). So, if you break into someone's house and let's say they prove that intent, you told all your friends you were going to break in there. You heard they had a million dollars and you were going out there to break in. All the witnesses come to Court to say that's true. So they got the intent element proved. But then, you park your car outside the house. You get scared and drive away. How many people think that is a substantial step so that you would be guilty of attempted burglary?

Id. at 72-73. Campbell also takes issue with trial counsel asking prospective jurors whether they believe it would be attempted murder to fire a gun at someone's head and miss.

7

Proper voir dire examination may include questions designed to disclose the prospective jurors' attitudes towards the offense charged and to uncover preconceived ideas about defenses the defendant intends to use. Steelman v. State, 602 N.E.2d 152, 158 (Ind. Ct. App. 1992). In making these determinations, the parties may pose hypothetical questions, provided they do not suggest the existence of prejudicial evidence that will not be introduced at trial. Id. The function of voir dire is to ascertain whether prospective jurors can render a fair and impartial verdict in accordance with the law and evidence. Coy v. State, 720 N.E.2d 370, 372 (Ind. 1992). Campbell asserts trial counsel violated these principles by suggesting the existence of prejudicial evidence that Campbell intended to rob the Kincaids.

We disagree with Campbell. The bar on suggesting the existence of unintroduced (or non-existent) prejudicial evidence during voir dire has usually been applied to prosecutors, and even then only in cases where the hypothetical "bore a striking resemblance to the facts of the case at hand." Robinson v. State, 260 Ind. 517, 519, 297 N.E.2d 409, 411 (1973). In Robinson, for instance, upon which Campbell relies, our supreme court found reversible prosecutorial misconduct where a defendant was accused of murdering his twenty-year-old daughter, and the prosecutor repeatedly asked during voir dire whether prospective jurors could vote for the death penalty if "a father killed his twenty year old daughter because she resisted his sexual advances," but there was in fact no evidence of such advances presented during trial, aside from unsupported innuendos of incest. Id.; see also Perryman v. State, 830 N.E.2d 1005, 1009-10 (Ind. Ct. App. 2005) (holding prosecutor engaged in improper voir dire by reciting hypothetical with facts

8

similar to facts of the case and suggesting that such facts would establish the existence of drug dealing, but defendant was only charged with drug possession).

Here, by contrast, the purported hypotheticals given by trial counsel were clearly just that—hypotheticals intended to explore the prospective jurors' views on defenses to be used. They bore only tangential similarities to the actual case and the evidence adduced at trial. As trial counsel explained during the post-conviction hearing, he was attempting to find jurors who would be receptive to a claim of self-defense by not having a narrow view of when self-defense could be invoked, and he was attempting to find jurors who would require the State to produce more evidence of a substantial step in order to convict Campbell of attempted murder than other jurors might require. Also, contrary to Campbell's claim, the hypotheticals did not incorrectly suggest that Campbell was going to pursue a defense of abandonment; instead, they explored the jurors' understanding of the substantial step requirement for attempt crimes. We cannot say trial counsel performed below an objective standard of reasonableness in the manner in which he conducted voir dire. To hold otherwise would be tantamount to hyper-regulation and second-guessing of trial counsel's strategy and tactics, a task we cannot and should not undertake.

## II. Supplemental Jury Instruction

Next, we address Campbell's argument that the trial court erred in giving the following instruction to the jury when it asked for a definition of "intent" during its deliberations:

> A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. If a person is charged with intentionally causing a result by his

conduct, it must have been his conscious objective not only to engage in the conduct, but to cause the result.

Trial Tr. p. 998. The jury had not previously been instructed on the definition of "intent" or "intentionally." Campbell does not present a cogent argument that the trial court could not give a supplemental instruction of the definition of "intentionally" during deliberations but does argue that the second sentence is a misstatement of the law and trial counsel should have objected to it being given.

The above instruction, including the second sentence, is from Indiana Criminal Pattern Jury Instruction 9.05. The first sentence is a verbatim recitation of the statutory definition of "intentionally" found in Indiana Code Section 35-41-2-2(a). Regarding the second sentence, this court stated in Johnson v. State, 605 N.E.2d 762, 768 (Ind. Ct. App. 1992), trans. denied, that a jury instruction containing that sentence, when combined with other instructions given, "properly informed the jury of the State's burden of proof." However, in Corley v. State, 663 N.E.2d 175, 177 (Ind. Ct. App. 1996), this court held that it was proper to refuse to give a defendant's tendered jury instruction that included the second sentence because it was "not a correct statement of the law."

Campbell relies upon Corley in arguing that trial counsel should have objected to the second sentence of the instruction being given to the jury. Furthermore, he seems to claim the second sentence relieved the State of its burden of proving his intent to kill the Kincaids under the attempted murder charges. Essentially, Campbell posits that the second sentence informed the jury that simply because he had been charged with attempted murder, it "must have been his conscious objective" to kill the Kincaids. Trial Tr. p. 998.

10

Although this is a novel argument, we see Campbell's point that it would be preferable either for the second sentence not to be included in the pattern jury instruction, or that if it is to be included, it should be rewritten to state, "If a person is charged with intentionally causing a result by his conduct, <u>the State must prove that it was</u> his conscious objective not only to engage in the conduct, but to cause the result."

We cannot conclude trial counsel was ineffective for not objecting to the instruction. Regarding reasonable performance, trial counsel indicated at the post-conviction hearing that he doubted any objection to the instruction would have been fruitful because it was a pattern instruction.[2] Pattern jury instructions are given preferential treatment during litigation, though they have not been formally approved by the Indiana Supreme Court. <u>Clay City Consol. School Corp. v. Timberman</u>, 918 N.E.2d 292, 295 (Ind. 2009). Given some tension between <u>Johnson</u> and <u>Corley</u> as to whether the second sentence of the pattern instruction is a correct statement of the law, the fact that our supreme court has not weighed in on the subject, and the fact that this is a pattern instruction, there was no unequivocal legal basis upon which trial counsel should have objected to the instruction. In such a case, we cannot say counsel performed deficiently. <u>See</u> <u>Lemond v. State</u>, 878 N.E.2d 384, 393 (Ind. Ct. App. 2007) (citing <u>Concepcion v. State</u>, 796 N.E.2d 1256, 1261 (Ind. Ct. App. 2003), <u>trans. denied</u>) (rejecting ineffective assistance claim where state of law was unclear at time of alleged deficient performance), <u>trans. denied</u>.

---

[2] Trial counsel also indicated that the second sentence could be read as increasing, not decreasing, the State's burden of proof, with respect to it having to prove a defendant's conscious objective to cause a result, not merely to engage in conduct.

11

We also believe Campbell failed to prove any prejudice resulting from this instruction being given. Although we have noted some potential for confusion from the second sentence of the instruction as far as shifting the State's burden of proof, in the present case if any such confusion existed it plainly should have been alleviated by other instructions given to the jury that emphasized the State's burden of proof. For example, the jury was instructed, both in preliminary and final instructions, "The fact that a charge has been filed, the Defendant arrested and brought to trial is not to be considered by you as any evidence of guilt." Trial App. p. 553. Other given instructions clearly emphasized the State's burden of proof beyond a reasonable doubt, the presumption of innocence enjoyed by Campbell, and that Campbell was not required "to prove or explain anything." Id. at 559. When considering the efficacy of jury instructions, we must consider them as a whole and in reference to each other, not in isolation. O'Connell v. State, 970 N.E.2d 168, 175 (Ind. Ct. App. 2012). We conclude that, given the entirety of the instructions, there is little to no chance that the jury misunderstood the second sentence of the "intentionally" instruction as meaning that the fact Campbell was charged with attempted murder by itself was proof that he had the intent to kill the Kincaids. Campbell did not receive ineffective assistance of counsel on this point.

## Conclusion

Campbell failed to establish that he received ineffective assistance of trial counsel with respect to either the manner in which voir dire was conducted or in the failure to object to the supplemental jury instruction defining "intentionally." We affirm the denial of Campbell's PCR petition.

Affirmed.

ROBB, J., and BROWN, J., concur.