# United States Court of Appeals
## For the First Circuit

No. 18-1801

MICHAEL COWELS and MICHAEL MIMS,

Plaintiffs, Appellants,

v.

THE FEDERAL BUREAU OF INVESTIGATION,
CHRISTOPHER WRAY, and PAULA WULFF,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Ezekiel L. Hill, with whom David J. Apfel, Kathleen McGuinness, and Goodwin Procter LLP were on brief, for appellant Michael Cowels.
Elliot M. Weinstein on brief for appellant Michael Mims.
Annapurna Balakrishna, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellees.

August 26, 2019

**LIPEZ**, **Circuit Judge**.    Appellants Michael Cowels and Michael Mims were convicted of murder in state court and spent twenty years behind bars serving life sentences.  After new testing of trial evidence cast doubt on the verdict, they were granted a new trial.  Subsequent DNA testing of a swab taken from the inside of a condom recovered in the vicinity of the victim during the initial investigation revealed an unknown male DNA profile.  Cowels and Mims obtained a state court order requiring Massachusetts to upload the DNA profile into a state database of DNA records for comparison purposes.  No matches were found.  The FBI, however, refused to upload the profile into the national DNA database after determining that it was ineligible for upload.  Cowels and Mims went to federal court to compel the FBI to upload the profile, but the district court dismissed their suit based on its conclusion that the FBI's eligibility determination is unreviewable.

Without suggesting that the district court erred in its analysis, we assume that the FBI's eligibility determination is reviewable.  Having done so, we conclude that the determination was not arbitrary and capricious.  We therefore affirm the dismissal of appellants' suit.

**I.**

**A. Legal Background**

The DNA Identification Act of 1994 authorized the FBI Director to establish a DNA index, including DNA identification

- 2 -

records of persons charged or convicted of crimes and "analyses of DNA samples recovered from crime scenes," 34 U.S.C. § 12592(a)(1)-(2), "to facilitate law enforcement exchange of DNA identification information," id. § 12592 (title). Pursuant to this authority, the FBI Director created the Combined DNA Index System ("CODIS"), which operates at the local, state, and national levels. The State DNA Index System ("SDIS") is managed by participating states, and the National DNA Index System ("NDIS"), which aggregates all the DNA records contained in the state databases, is managed by the FBI.[1] See generally Boroian v. Mueller, 616 F.3d 60, 63 (1st Cir. 2010) (describing CODIS).

The DNA Identification Act itself lays out certain minimum standards for determining whether a DNA record may be uploaded to the CODIS system. For example, DNA records may only be uploaded if the underlying analysis was performed by an accredited laboratory in accordance with quality assurance standards established by the FBI. 34 U.S.C. § 12592(b)(1)-(2)(A)(i). The FBI's NDIS Operational Procedures Manual ("the Manual") provides additional guidelines for

---

[1] For context, the Massachusetts SDIS contains about 147,290 offender and arrestee DNA profiles, while the NDIS contains over 17 million offender and arrestee DNA profiles. See Federal Bureau of Investigation, CODIS - NDIS Statistics (June 2019), https://fbi.gov/services/laboratory/biometric-analysis/codis/ndis-statistics (last visited August 22, 2019).

determining whether DNA records are eligible for inclusion in the NDIS. Of relevance to this appeal, pursuant to the Manual, a DNA record that "originate[s] from and/or [is] associated with a crime scene" is eligible for upload if it is "believed to be attributable to the putative perpetrator."[2]

## B. Factual Background

In 1994, a Massachusetts jury convicted Cowels and Mims of murdering Belinda Miscioscia, who was found brutally stabbed to death behind a woodworking shop in a yard known as a location for sexual trysts. Among the evidence presented at trial were two bloody towels recovered from the home of a friend of Cowels and Mims, which bolstered the friend's testimony that Cowels and Mims came to his home the night of the murder, made incriminating statements, and cleaned up in his bathroom. Analysis of the only towel with a large enough amount of blood for testing neither identified nor excluded the men or the victim as sources. At trial, a state forensic scientist also testified about collecting "an older, wrinkled condom . . . covered with dirt and debris as well as sawdust" from the vicinity of the body. The forensic scientist testified that she tested the condom for hair and fibers

---

[2] We base our discussion of the NDIS Manual on the version included by the parties in the Joint Appendix and relied on by the district court, which became effective in July 2017. The parties have not suggested that any other version of the Manual is relevant to this appeal.

and swabbed the inside of the condom, confirming the presence of seminal fluid residue.  The condom was not tested for DNA.

Twenty years into serving their life sentences, Cowels and Mims were granted a new trial by the Massachusetts Supreme Judicial Court based on new DNA testing of the previously tested towel.  See Commonwealth v. Cowels, 24 N.E.3d 1034, 1037 (Mass. 2015).  The new testing confirmed that the blood did not come from either man or from the victim.  In preparation for a new trial, other items collected during the initial investigation were also DNA-tested.  Testing by a state forensic scientist of the swab taken from inside the condom indicated sperm and non-sperm male DNA from more than one contributor.  Only one of the DNA profiles was suitable for comparison but it did not match either Cowels or Mims.[3]  However, the forensic scientist concluded that this DNA profile was ineligible for upload to CODIS.

Cowels and Mims filed a motion in Massachusetts Superior Court to compel the Commonwealth to submit the condom DNA profile to the SDIS and to share the results.  They contend that uploading the profile may lead to apprehension of the true killer, who they speculate could be any one of a number of violent and jealous men

---

[3]  We follow the parties in describing the relevant DNA information that Cowels and Mims want entered in the national database as a "DNA profile."  The Manual defines this term as "[t]he genetic constitution of an individual at defined locations (also known as loci) in the DNA."

the victim was involved with in the months before her death. The Commonwealth opposed the motion, arguing that the DNA profile did not qualify for submission to CODIS pursuant to FBI standards. Recognizing that uploading the profile "risks implicating a person entirely innocent of this murder, who merely happened to be having sex in the same area, unrelated to th[e] victim or to the time of her death," the Superior Court nonetheless ordered the Commonwealth to submit the DNA profile to the SDIS. Sup. Ct. Order Dec. 4, 2017, at 2-3. The Commonwealth entered the DNA profile into the state database, but there was no match.

Dorothea Collins, the CODIS administrator for the Massachusetts State Police Crime Laboratory, emailed the FBI, informing the agency about the court order and reiterating the Commonwealth's view that the DNA profile is ineligible for upload to either the SDIS or the NDIS, but requesting that the FBI review for itself whether the DNA profile is eligible for upload to the national database. Collins attached to her email Cowels's and Mims's motion in the Superior Court, the court order, and her affidavit in the Superior Court matter, in which she stated (1) that the victim's body was found "clothed, outside on a platform," and that the condom "was found on the ground between the platform and a tank, covered in sawdust, dirt and vegetation"; and (2) that the victim's DNA was not part of the mixture taken from the inside of the condom. Collins thus concluded in her

- 6 -

affidavit that, "[a]lthough the condom was collected from the crime scene during the course of the investigation, its connection to Ms. Miscioscia is not established to support a CODIS upload." Paula Wulff, Unit Chief of the FBI Office of the General Counsel's Forensic Science Law Unit, responded to Collins's email that the FBI had reviewed the attached materials and determined that the DNA profile was not eligible for upload to the NDIS because the condom was not sufficiently linked to the victim.

An assistant district attorney followed up with a request that the FBI consider performing a manual keyboard search -- which is a method of comparing a DNA record to other records in CODIS without uploading the record -- even if they would not upload the profile to the NDIS. The assistant district attorney explained, "[w]hile we have shared the FBI's view of the relevance of this evidence in our murder case, . . . I am respectfully requesting that this search be done as a courtesy to me and my office, out of respect for the [c]ourt's prior order, and my desire to avoid the eventual trial judge, and possibly even the jury, misunderstanding the failure to upload the DNA profile in question to NDIS as 'the government being obstructionist.'" Wulff also rebuffed this request and shared a more in-depth written response explaining the FBI's determination that the DNA profile was not eligible for upload to the NDIS or for a manual keyboard search.

The response explained that the FBI had reviewed case materials, including the Superior Court order, Collins's affidavit, and case notes from the 1993 murder investigation. The response stated that the case notes described the condom as being discovered "under sawdust and debris -- covered with sawdust, dirt, dried vegetation etc. breaking apart." (Emphasis by the FBI.) The response also stated, "[t]here is no indication in the material provided that the condom was forensically connected to the victim." Citing the NDIS Operational Procedures Manual, the response concluded, "[f]rom the information that has been provided to the FBI, nothing forensically demonstrates a link between the victim and the subject condom to consider the obtained profile as coming from a putative perpetrator."

At some point during the course of the back-and-forth between the Commonwealth and the FBI, Cowels and Mims asked the Superior Court to specifically order the FBI to upload the profile. The court, however, declined this request, citing a lack of jurisdiction.

Cowels and Mims then filed a suit for declaratory and injunctive relief in federal court against the FBI, Wulff, and FBI Director Christopher Wray (collectively, "the FBI"), seeking an order directing the FBI to upload the condom DNA profile to the NDIS or to perform a manual keyboard search, and to report the results. In relevant part, they contend that the FBI's

determination that the DNA profile is ineligible for upload to the NDIS or for a manual keyboard search is arbitrary and capricious. The district court granted the FBI's motion to dismiss after concluding that the agency's eligibility determination is not subject to judicial review. The court also stated that, even assuming the determination is subject to judicial review, Cowels and Mims were not likely to prevail because "[n]othing in the FBI's decision rises to [the] level of capriciousness or indifference." Cowels v. FBI, 327 F. Supp. 3d 242, 250 n.2 (D. Mass. 2018). This timely appeal followed.[4]

## II.

We review the district court's grant of the FBI's motion to dismiss de novo and may affirm on any ground supported by the record. Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 164 (1st Cir. 2018).

The Administrative Procedure Act ("APA") waives federal sovereign immunity for suits alleging injury by agency action. 5 U.S.C. § 702. However, "agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" Lincoln v. Vigil, 508 U.S. 182, 190-91 (1993) (quoting 5 U.S.C. § 701(a)(2)). The district court determined

---

[4] Cowels and Mims are not appealing the district court's dismissal of their constitutional claims, which we do not otherwise discuss.

- 9 -

that this case presents one of these "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Cowels, 327 F. Supp. 3d at 249 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)) (internal quotation marks omitted). In other words, because the DNA Identification Act merely authorizes the FBI to create a database that meets certain minimum standards, but does not require the inclusion of any material in that database, "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985).

Cowels and Mims disagree. They do not appear to contend that the Act alone provides judicially reviewable standards. Rather, they argue that the Act when read in conjunction with the NDIS Manual provides meaningful standards by which to review the FBI's determination that the DNA profile was not eligible for upload. As they put it, "[e]stablishing the NDIS Manual's policies and procedures cabined the FBI's discretion, and having established those policies and procedures, the FBI cannot disregard them."

We need not decide this difficult reviewability issue. Where a question of statutory jurisdiction is complex, but the merits of the appeal are "easily resolved against the party invoking [] jurisdiction," we can assume jurisdiction for purposes

of deciding the appeal.  In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 114 n.13 (1st Cir. 2019); see also Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007) (assuming statutory jurisdiction before determining whether an agency decision was arbitrary and capricious).  We do so in this case and proceed to the merits, readily concluding that the FBI's eligibility determination was not arbitrary and capricious when measured by any cognizable standard in the Act or the Manual.[5]

An agency action is arbitrary and capricious if the agency "relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise."  Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016) (quoting Associated

---

[5]  Under the APA, a reviewing court may, inter alia, "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), or "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," id. § 706(2)(A).  Appellants pleaded both bases for judicial review before the district court, but, on appeal, they focus on their contention that the FBI's eligibility determination regarding the DNA profile was arbitrary and capricious.  We reject the FBI's suggestion that the "gravamen" of appellants' case is a challenge to agency action "unlawfully withheld" and that appellants did not adequately plead that the FBI's eligibility determination was arbitrary and capricious.

Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997)). Pursuant to this "highly deferential" standard of review, Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir. 1995), we will uphold an agency determination if it is "supported by any rational view of the record," Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015).

Cowels and Mims contend that the FBI's eligibility determination was arbitrary and capricious because the reasons the agency provided to support its determination that the DNA profile was not "attributable to the putative perpetrator" -- the standard from the Manual -- do not withstand scrutiny.[6] We disagree. In the explanation of its eligibility determination, the FBI focused on (1) the condition of the condom, and (2) the lack of any forensic connection between the condom and the victim. Both of these reasons support the FBI's eligibility determination. The condition of the condom when found -- "covered with sawdust, dirt, dried vegetation etc. breaking apart" -- supports a conclusion that the condom was not temporally related to the murder. And the lack of DNA evidence tying the condom to the victim supports a

---

[6] In the explanation of its eligibility determination, the FBI stated that a manual keyboard search is "an exceptional mechanism that is used in exigent circumstances." Appellants do not appear to challenge the FBI's implicit conclusion that exigent circumstances supporting a manual keyboard search do not exist in this case regardless of whether the DNA profile was eligible for upload.

conclusion that, given the condition of the condom, uploading the DNA profile could implicate an innocent person rather than reveal the perpetrator.

Cowels's and Mims's attempts to poke holes in the FBI's reasons for its determination are unavailing. Regarding the condition of the condom, they point to the fact that the condom was collected and tested by a forensic scientist at the time of the original investigation, and that the Commonwealth DNA-tested the condom swab after they were granted a new trial. They argue that this testing shows that the Commonwealth believed the condom was connected to the murder despite its condition. Moreover, they contend that the Commonwealth changed its view only when it became clear that the condom could be exculpatory. But the record before us does not support the contention that the Commonwealth necessarily viewed the condom as connected to the putative perpetrator. As noted, the forensic scientist who collected the condom testified at trial that it was "an older, wrinkled condom . . . covered with dirt and debris as well as sawdust" (emphasis added), and it does not appear that the condom featured in the prosecution's case at trial, see Cowels, 24 N.E.3d at 1038-1040. Similarly, we cannot glean from the mere fact that the Commonwealth DNA-tested multiple items, including the condom swab, after the men were granted a new trial, that the Commonwealth saw the condom as related to the perpetrator until it was determined to be

potentially exculpatory. Most importantly, we do not see how any shift in the Commonwealth's position undermines the FBI's ability to make its own independent judgment, on the basis of undisputed facts, about the condition of the condom and its temporal connection to the murder.

Regarding the lack of a forensic connection between the condom and the victim, appellants contend that the FBI "ignore[d] the fact that the Swab DNA Profile was not taken from the Condom but from the Swabs of the inside of the Condom, and that the Condom itself" -- that is, the outside of the condom, where the victim's DNA would more likely be found -- "was never tested for DNA."[7] They therefore suggest that the FBI's eligibility determination was based in part on "the arbitrary and capricious view that the inside of the Condom could somehow include [the victim]'s DNA." Some of the language in the FBI's written explanation of its eligibility determination does suggest that the agency was not fully attuned to the distinction between the DNA testing of the swab from the inside of the condom and testing of the outside of the condom, which was never performed. See, e.g., FBI Response to NDIS Upload Request, at 1 (noting the absence of the victim's DNA

_____

[7] The parties have not contended before us that the outside of the condom can now be tested to determine whether the victim's DNA is present. Indeed, at oral argument, appellants' counsel explicitly stated that he was not representing that there is a possibility that the outside of the condom can now be tested.

- 14 -

"as would be expected had the condom come in contact with the victim").

However, the FBI's entire explanation makes reasonably clear that the agency's focus was on the absence of any DNA connection in the record between the condom and the victim -- a lack of connection that appellants do not contest -- rather than on a misguided understanding that testing had definitively established that the condom had never come into contact with the victim.[8]  In other words, the FBI correctly noted that the record before it did not establish any DNA connection between the condom and the victim.  And we readily conclude that this absence of evidence was a rational reason, along with the condom's condition, for the FBI's determination that the swab DNA profile could not be "attribut[ed] to the putative perpetrator," and therefore was ineligible for upload to the NDIS.[9]

---

[8]  We do not rely on the FBI's contention, seemingly first raised at oral argument, that there was effectively no distinction between the outside and the inside of the condom because it was breaking apart.

[9]  Because we affirm on the basis that the FBI's eligibility determination was not arbitrary and capricious, we do not opine on the FBI's argument that Cowels and Mims would not be entitled to information resulting from comparing the condom DNA profile with DNA records in the NDIS.

## III.

For the foregoing reasons, we affirm the dismissal of appellants' claims.

So ordered.